**Case No. 15-20618**

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

**ASHRAF MAHMOUD; VALERIE JACKSON,**
**Plaintiffs – Appellants**

v.

**DE MOSS OWNERS ASSOCIATION, INCORPORATED;**
**CREATIVE MANAGEMENT COMPANY;**
**FRANK, ELMORE, LIEVENS, CHESNEY, & TURET, L.L.P.;**
**KRISTI A. SLAUGHTER; KHOSROW ABTAHI,**
**Defendants – Appellees**

**Appeal from the United States District Court**
**Southern District of Texas**
**Case No. 4:13-cv-01758**

**APPELLANTS' BRIEF**

Lindsay L. Lambert
9800 Centre Pkwy, Ste 645
Houston, Texas  77036
LLambert@LJLawfirm.net
713.640.5700 tel
855.678.5585 fax

ATTORNEY  FOR  APPELLANTS

## I.    CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.


Valerie Jackson (Jackson), Appellant
Ashraf Mahmoud (Mahmoud), Appellant

Lindsay L. Lambert, Attorney for Appellants Jackson and Mahmoud
Henry A. Jakob, Attorney for Appellants Jackson and Mahmoud
Lambert & Jakob, PLLC, Attorneys for Appellants Jackson and Mahmoud

De Moss Owners Association (De Moss), Appellee
Creative Management Company (Creative), Appellee

Laura Beckman Hedge, Attorney for Appellees De Moss and Creative
Valarie J. Eissler, Attorney for Appellees De Moss and Creative
Litchfield Cavo, L.L.P., Attorneys for Appellees De Moss and Creative

Kristi Slaughter (Slaughter), Appellee
Frank, Elmore, Lievens, Chesney & Turet, L.L.P. (FELCT), Appellee

William S. Chesney, III, Attorney for Appellees Slaughter and FELCT
William L. Van Fleet, Attorney for Appellees Slaughter and FELCT


  /s/ Lindsay L. Lambert
Lindsay L. Lambert
Attorney for Appellants

## II.    <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant waives oral argument.

**III.  <u>TABLE OF CONTENTS</u>**

I.    CERTIFICATE OF INTERESTED PERSONS ......................................i

II.   STATEMENT REGARDING ORAL ARGUMENT .......................... ii

III.  TABLE OF CONTENTS....................................................... iii

IV.  TABLE OF AUTHORITIES ..................................................vi

V.   JURISDICTIONAL STATEMENT ........................................xi

    A.  Basis for Jurisdiction in the District Court ........................ xi

    B.  Basis for Jurisdiction in the Court of Appeals................................. xi

    C.  Filing Dates Establishing Timeliness of Appeal.............................. xii

    D.  Final Order Disposing of All Parties' Claims.................................. xii

VI.  ISSUES PRESENTED........................................................ xiii

VII.  STATEMENT OF THE CASE.............................................1

VIII. FACTS ..........................................................................4

    A.  Introduction .............................................................4

    B.  The Governing Agreements ..................................................5

    C.  Creative Management Company........................................9

    D.  Slaughter and FELCT ....................................................10

    E.  Property Value on the Foreclosure Date ............................13

IX.  SUMMARY OF THE ARGUMENT ...................................14

X.    STANDARD FOR REVIEW ............................................................16

XI.    ARGUMENT ...............................................................................17

   A.    Introduction .......................................................................17

   B.    Evidentiary Objections........................................................18

   C.    Breach of Contract by De Moss...........................................22

      1.    Plaintiffs' Performance....................................................22

      2.    Breach by De Moss - Inflated Late Charges .....................23

      3.    Breach by De Moss - Foreclosure Based on Time-Barred Debt.....26

      4.    Breach by De Moss – Foreclosure Based on Repair Assessments Without Notice and Opportunity to be Heard .................29

      5.    Damages ......................................................................30

   D.    Wrongful Foreclosure by De Moss.......................................31

   E.    Declaratory Judgment Against De Moss ..............................33

   F.    Negligent Misrepresentation Against De Moss, Creative, Slaughter and FELCT..........................................................34

      1.    Creative, Slaughter and FELCT Did Not Seek Summary Judgment On Negligent Misrepresentation .......................35

      2.    The Evidence Proves Negligent Misrepresentation .........36

   G.    FDCPA Violations by Slaughter and FELCT.........................38

      1.    Introduction .................................................................38

2.    Sections 1692e and 1692f Violations ...............................................40

3.    Section 1692g Violations ................................................................44

H.   TDCA Violations by Slaughter and FELCT......................................50

I.    DTPA Violations by Slaughter and FELCT ......................................51

J.    Breach of Fiduciary Duty Against Slaughter and FELCT.................54

XII.  CONCLUSION AND PRAYER ...........................................................55

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ............................57

CERTIFICATE OF SERVICE......................................................................58

## IV.     TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ..................................16

*Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997)....................................... 46, 49

*Biggers v. BAC Home Loans Servicing, LP,* 767 F.Supp.2d 725, 729 (N.D.Tex.2011) (Fitzwater, C.J.).........................................................................32

*Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C*, 01-13-00068-CV, 2014 WL 982858 (Tex. App.—Houston [1st Dist.], no pet.)...........54

*Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994), citing *Munn v. Algee,* 924 F.2d 568, 573 (5th Cir.1991) .............................................................................21

*Castro v. Collecto, Inc.*, 634 F.3d 779, 783, 787 (5th Cir.2011) ...........................40

*Corley v. United States*, 556 U.S. 303, 314 (2009) ................................................52

*Crown Life Ins. Co.* v. *Casteel*, 22 S.W.3d 378, 387 (Tex. 2000).........................53

*Cushman v. Resolution Trust Co.*, 954 F.2d 317, 323 (5th Cir. 1992) .................28

*Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009).................................................54

*Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) ..36

*Feist v. La., Dep't of Justice, Office of the Att'y Gen.,* 730 F.3d 450, 452 (5th Cir.2013). .......................................................................................................16

*FG Hemisphere Associates, LLC v. Republique du Congo*, 455 F.3d 575, 580 (5th Cir. 2006) ......................................................................................................29

*Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir.2001) ..............40

*Gorman v. Verizon Wireless Texas*, *L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) ...16

*Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir.2004)........45

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ..........................52

*Herkert v. MRC Receivables Corp.*, 655 F.Supp.2d 870, 875 (N.D.Ill.2009)........40

*Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001)...27

*Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir.2011)......................40

*Hurd v. BAC Home Loans Servicing, LP,* No. 3:11–CV–1752–M, 2012 WL 1106932, at *15 (N.D.Tex. Mar.29, 2012) ..........................................................31

*Iglehart v. Wells Fargo Bank, N.A.*, 2014 WL 1759714, at *4 (E.D. Tex. Mar. 31, 2014) ...................................................................................................................50

*In re Keener,* 268 B.R. 912, 921 (Bankr.N.D.Tex.2001)........................................31

*John Deere Co. v. Am. Nat. Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) ..................................................................................................................................35

*Johnson v. Wells Fargo Bank*, NA, 999 F. Supp.2d 919, 933 (N.D. Tex. 2014)..50

*Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006)..................................41

*Kennett-Murray* ......................................................................................................28

*Kruse v. Bank of New York Mellon*, 936 F.Supp.2d 790, 792 (N.D.Texas 2013).50

*Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W.3d 808, 813-14 (Tex.App.—Dallas 2013, no pet.)........................................................................22

*Marsh v. Wells Fargo Bank,* 760 F.Supp.2d 701, 708 (N.D.Tex.2011) ................31

*Matthews v. JPMorgan Chase Bank, N.A.,* No. 3:11–CV–00972–M, 2011 WL 3347920, at *2 (N.D.Tex. Aug.1, 2011) ...................................................... 31, 32

*McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)........................................29

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 947–49 (9th Cir.2011).................................................................................................40

*McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) ..... 45, 46, 47, 48

*Mitchell v. Deutsche Bank & Trust Co.,* No. 3:10–CV–1812–BH, 2012 WL 1670168, at *2 (N.D.Tex. May 14, 2012)............................................................31

*Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Texas 2013)....50

*O'shea v. IBM Corp.*, 578 S.W.2d 844, 856 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) ..................................................................................................23

*Ogden v Gibralter Sav. Ass'n.*, 640 S.W.2d 232, 233 (Tex.1982) ........................32

*Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir.2002)) .................................46

*Phillips v. Asset Acceptance*, LLC, 736 F.3d 1076, 1079 (7th Cir.2013) ..............40

*Quarles v. St. Clair*, 711 F.2d 691, 701 - 7702 (5th Cir. 1983) .............................43

*Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex.App.-Corpus Christi 2008, no pet.) ......................................................................................................31

*Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) (emphasis added) ......................................................................................19

*Thornton, Summers, Biechlin, Dunham & Brown, Inc. v. Cook Paint & Varnish*, 82 F.3d 114, 116 (5th Cir. 1996) .........................................................................16

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ........................28

*Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied)......................................................................54

*University Sav. & Loan Ass'n v. Security Lumber Co.,* 423 S.W.2d 287, 292 (Tex. 1967) ...................................................................................................................28

*Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995) ............35

*Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) .......50

*Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) .....................................43

## Statutes

15 U.S.C. § 1692g(b) ............................................................45

15 U.S.C. §1692a(6) ............................................................41

15 U.S.C. §1692k(c) ............................................................43

15 U.S.C. 1692a ....................................................................5

FED. R. CIV. P. 56(a) ...........................................................16

TEX. BUS & COMM. CODE §17.43 .......................................51

TEX. BUS & COMM. CODE §17.50(h)....................................51

TEX. BUS. & COM. CODE, ch. 17 ...........................................5

TEX. CIV. PRAC. & REM. CODE §16.035(b) ................. 9, 26, 27

TEX. CIV. PRAC. & REM. CODE §16.035(d) ..........................27

TEX. FIN. CODE 392.303(a)(2) ............................................51

TEX. FIN. CODE 392.304(a)(19) ..........................................51

TEX. FIN. CODE 392.304(a)(8) ............................................51

TEX. FIN. CODE 392.404(a) .................................................52

TEX. FIN. CODE ch. 392 ........................................................5

TEX. FIN.CODE §392.304(a)(8) ...........................................50

TEX. PROP. CODE §202.001 ..................................................8

TEX. PROP. CODE §202.006(a) ............................... 8, 25, 26, 34

TEX. PROP. CODE §202.006(b) ............................... 8, 25, 26, 34

TEX. PROP. CODE §51.002(d) ..............................................32

TEX. PROP. CODE §82.003(11) ..............................................8

TEX. PROP. CODE §82.102(a)(12)................................... 24, 33

TEX. PROP. CODE §82.102(d) ...........................................7, 29

**Rules**

LR 46, Local Rules of the Southern District of TX................................................20

## V.    JURISDICTIONAL STATEMENT

### A.    Basis for Jurisdiction in the District Court

Appellants Jackson and Mahmoud seek statutory and actual damages for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq*. Therefore, federal question jurisdiction exists under 28 U.S.C. §1331. Jackson and Mahmoud also seek statutory and actual damages under state law arising out of the same nucleus of operative facts as plaintiffs' FDCPA claims, thus forming part of the same case or controversy. Supplemental jurisdiction exists under 28 U.S.C. §1367.

### B.    Basis for Jurisdiction in the Court of Appeals

The District Court signed a final judgment dated and entered September 30, 2015, disposing of all claims and all parties.[1] Jackson and Mahmoud filed their notice of appeal on October 27, 2015, within 30 days after entry of the judgment appealed from.[2] Jurisdiction exists on appeal under 28 U.S.C. §1291 and FED. R. APP. P. 3 and 4.

---

[1] ROA.2236.
[2] ROA.2237.

### C.  <u>Filing Dates Establishing Timeliness of Appeal</u>

The District Court signed a final judgment dated and entered September 30, 2015, disposing of all claims and all parties.[3]  Jackson and Mahmoud filed their notice of appeal on October 27, 2015, within 30 days after entry of the judgment from which they appealed.[4]  Jackson and Mahmoud timely filed their notice of appeal in accord with FED. R. APP. P. 4.

### D.  <u>Final Order Disposing of All Parties' Claims</u>

The District Court signed a final judgment against Jackson and Mahmoud, dated and entered September 30, 2015, disposing of all claims and all parties.[5]

---

[3] ROA.2236.
[4] ROA.2237.
[5] ROA.2236.

## VI.   <u>ISSUES PRESENTED</u>

1.     Whether the District Court committed reversible error when it overruled Jackson and Mahmoud's objections to the summary judgment evidence.

2.     Whether a genuine dispute of material fact exists or movant is entitled to judgment as a matter of law on the following claims by Jackson and Mahmoud:

    i.     Breach of contract against De Moss;

    ii.     Wrongful foreclosure against De Moss;

    iii.     Declaratory judgment against De Moss;

    iv.     Negligent Misrepresentation against De Moss;

    v.     Negligent Misrepresentation against Creative;

    vi.     Negligent Misrepresentation against Slaughter and FELCT;

    vii.     Fair Debt Collection Practices Act against Slaughter and FELCT;

    viii.     Texas Debt Collation Act against Slaughter and FELCT;

    ix.     Texas Deceptive Trade Practices Act against Slaughter and FELCT;

    x.     Breach of fiduciary duty against Slaughter.

## VII.  <u>STATEMENT OF THE CASE</u>

Plaintiffs/Appellants, Jackson and Mahmoud, filed their Original Complaint on June 17, 2013, against De Moss, Creative, Slaughter, Slaughter's law firm, FELCT, and Khoshrow Abtahi.[6]  Jackson and Mahmoud filed their First Amended Complaint on June 28, 2013, non-suiting Khoshrow Abtahi before any defendant filed an answer.[7]

Jackson and Mahmoud complain that they were given improper demand notices containing false statements and based upon unauthorized and improper charges which led to a defect in the foreclosure sale of their condominium and resulting in actual damages. Jackson and Mahmoud seek to recover under the federal Fair Debt Collection Practices Act (FDCPA),[8] the Texas Debt Collection Act (TDCA),[9] the Texas Deceptive Trade Practices Act (DTPA)[10] through the TDCA tie-in provisions,[11] declaratory judgment, breach of contract, wrongful foreclosure, negligent misrepresentation and breach of fiduciary duty.[12]

---

[6] ROA.11.

[7] ROA.55.

[8] 15 U.S.C. §1692a *et seq.*

[9] TEX. FIN. CODE ch 392.

[10] TEX. BUS. COMM. CODE, Ch 17.

[11] TEX. FIN. CODE §392.404.

[12] ROA.55-86.

Appellees De Moss and Creative answered jointly.[13]  Appellees Slaughter and FELCT answered jointly[14] and subsequently filed their First Amended Answer[15] with leave of court.[16]

Jackson and Mahmoud filed their Motion for Partial Summary Judgment seeking interlocutory judgment on liability against De Moss, Creative, Slaughter and FELCT.[17]  Slaughter and FELCT filed a joint response,[18] as did De Moss and Creative.[19]  Jackson and Mahmoud filed Replies, objecting to certain evidence attached to both Slaughter/FELCT's joint response and De Moss/Creative's joint response.[20]

Slaughter and FELCT filed their joint cross Motion for Summary Judgment.[21]  De Moss and Creative also filed their joint cross Motion for Summary Judgment.[22]  Jackson and Mahmoud filed responses to both cross motions, objecting to certain evidence attached to both cross motions.[23]

---

[13] ROA.97.
[14] ROA.137.
[15] ROA.1102.
[16] ROA.1101.
[17] ROA.287-434.
[18] ROA.464-657.
[19] ROA.682-720.
[20] ROA.895-908, 913-928.
[21] ROA.1113-1309.
[22] ROA.1321-1604.
[23] ROA.1623-1867 and 2071-2177.

On June 8, 2015, the District Court heard argument on the parties' cross motions for summary judgment.[24]

On September 30, 2015, the District Court entered its Memorandum Opinion and Order overruling Jackson's and Mahmoud's evidentiary objections, denying Plaintiffs' Motions for Partial Summary Judgment and granting both Motions for Summary Judgment filed by De Moss, Creative, Slaughter and FELCT.[25] The District Court also entered its Final Judgment on September 30, 2015.[26]

On October 27, 2015, Jackson and Mahmoud filed their notice of appeal from the District Court's final judgment.[27]

---

[24] ROA.2283-2358.
[25] ROA.2213-2234.
[26] ROA.2236
[27] ROA.2237.

## VIII. <u>FACTS</u>

### A.  <u>Introduction</u>

This case concerns the events surrounding the February 5, 2013, foreclosure sale of the condominium unit belonging to Appellants Jackson and Mahmoud.

Jackson and Mahmoud claim that De Moss, Creative, Slaughter and FELCT made demands for payment and foreclosed on their property based upon time-barred debts, improper assessments, and unauthorized charges, which resulted in actual damages.[28]  Jackson and Mahmoud also claim Slaughter and FELCT's initial communication made demand for payment in a manner overshadowing and inconsistent with the disclosures required under federal law.[29]

Jackson and Mahmoud seek relief against De Moss for breach of contract,[30] wrongful foreclosure,[31] and declaratory relief to determine their true obligations under the governing agreements and statutes.[32]

Jackson and Mahmoud seek relief against Creative under the federal Fair Debt Collection Practices Act (FDCPA),[33] the Texas Debt Collection Act

---

[28] First Amended Complaint, ROA.79-81.
[29] First Amended Complaint, ROA.72-73.
[30] First Amended Complaint, ROA.79-81.
[31] First Amended Complaint, ROA.78-79.
[32] First Amended Complaint, ROA.84-85.
[33] 15 U.S.C. 1692a et seq.

(TDCA),[34] the Texas Deceptive Trade Practices Act (DTPA),[35] and for negligent misrepresentation.

Jackson and Mahmoud seek relief against Slaughter and FELCT under the FDCPA, TDCA, DTPA, for negligent misrepresentation and for breach of fiduciary duty.

The District Court granted summary judgment that Jackson and Mahmoud take nothing on any of their claims. The summary judgment proof shows that genuine issues of material fact exist with respect to each of the claims by Jackson and Mahmoud.

## B.    <u>The Governing Agreements</u>

In 2001, Jackson and Mahmoud purchased their condominium unit number 806 (Property) and became an "Owner" in the De Moss Condominium Project (Project).[36] The Project is governed by the Condominium Declaration for De Moss Condominiums (Declaration) filed in the Condominium Records of Harris County, Texas in 1981.[37]

---

[34] TEX. FIN. CODE ch. 392.

[35] TEX. BUS. & COM. CODE, ch. 17.

[36] *See* General Warranty Deed dated January 25, 2001, ROA.1426.

[37] *See* Condominium Declaration for De Moss Condominiums recorded in the condominium records of Harris County, Texas, ROA.1873-1915 (hereinafter "Declaration").

The Declaration charges De Moss with administration of the Project and requires that De Moss act according to its By-Laws.[38] The Declaration and By-Laws require the affairs of De Moss to be governed by a Board of Directors (Board).[39] The Declaration authorizes the Board to hire a management company to manage Project operations.[40] Since 2006, the Board has relied on Creative to manage the Project.[41]

The Declaration imposes maintenance assessments (Monthly Assessments) on the Owners to pay the Project's recurring common expenses.[42] Both the Declaration and By-Laws authorize the Board to determine the Monthly Assessments to be paid equally by the Owners.[43] All unpaid Monthly Assessments constitute a lien with power of sale against the Owner's Condominium Unit.[44]

In contrast to the Monthly Assessment, the Declaration requires that due notice and opportunity for hearing be given to the Owner to dispute imposition of a special assessment for repair charges (Repair Assessment).[45] Likewise, the Texas

---

[38] Declaration at §4.1, ROA 1892; and By-Laws of De Moss Owners Association, Inc., ROA.1586-1604 (hereinafter "By-Laws").

[39] Declaration at §4.1, ROA 1892; and By-Laws at §5.1, ROA.1593.

[40] Declaration at §4.1, ROA 1892; and By-Laws at §7.1, ROA.1598.

[41] Letter from Creative dated February 14, 2006, ROA.1720.

[42] Declaration at §1.1(b) and §§5.1 to 5.2, ROA.1877, 1896-97.

[43] Declaration at § 5.3 and By-Laws at §5.3(e), ROA.1897 and 1594.

[44] Declaration at §5.9, ROA.1900-1901.

[45] Declaration at §1.1(s)(2), ROA.1880, which reads in relevant part:

Property Code requires notice and an opportunity to be heard before levy of a special assessment for repair charges.[46]

The Declaration imposes a $5.00 late charge for Monthly Assessment payments made after the 15th day of the month.[47] The By-Laws prohibit the Board from taking actions reserved to the Owners under the By-Laws or the Declaration.[48] Moreover, amendment of the Declaration requires approval by at least 90% of the Owners.[49] Nothing in the Declaration or By-Laws authorizes the Board to unilaterally increase the $5.00 late charge without approval of the Owners.

---

§1.1(s)(2) . . . The Association, after due notice and hearing, shall also have the authority to establish and fix a special assessment upon any Unit to secure the liability of the Owner of such Unit to the Association for any breach by such Owner of any of the provisions of this Declaration, which breach shall require an expenditure by the Association for repair or remedy.

[46] TEX. PROP. CODE §82.102(d) provides, in relevant part, that:

Before an association may charge the unit owner for property damage for which the unit owner is liable . . . the association shall give to the unit owner a written notice that:

    (1) describes the violation or property damage and states the amount of the proposed fine or damage charge;

    (2) states that not later than the 30th day after the date of the notice, the unit owner may request a hearing before the board to contest the fine or damage charge . . . .

[47] Declaration at §5.1, ROA.1896.

[48] By-Laws at §5.2, ROA.1593.

[49] Declaration at §8.1, ROA.1913.

The Declaration requires that every amendment be duly recorded in the county condominium records.[50]   Likewise, the Texas Property Code requires recordation of all dedicatory instruments.[51]   Under the statute, "dedicatory instrument" includes an instrument subjecting real property to:

> A. Restrictive covenants, bylaws, or similar instruments governing the administration or operation of a unit owner's association;
>
> B. Properly adopted rules and regulations of the unit owner's association; or
>
> C. All lawful amendments to the covenants, bylaws, instruments, rules or regulations.[52]

Effective January 1, 2012, the Texas Legislature amended the Texas Property Code to clarify that an unrecorded dedicatory instrument constitutes a nullity.[53]

---

[50] *Id.*

[51] TEX. PROP. CODE §202.006(a) states in relevant part:

> A property owners' association shall file all dedicatory instruments in the real property records of each county in which the property to which the dedicatory instruments relate is located.  (Added by Acts 1999, 76th Leg., ch. 1420, § 2, eff. Sept. 1, 1999).

[52] TEX. PROP. CODE §82.003(11)(A)-(C) and §202.001 (1)(A)-(C).

[53] TEX. PROP. CODE §202.006(b) states as follows:

> A dedicatory instrument has no effect until the instrument is filed in accordance with this section."  (Amended by Acts 2011, 82nd Leg., ch. 1142 (H.B. 1821), § 3, eff. Jan. 1, 2012).

### C.   <u>Creative Management Company</u>

By letter dated August 24, 2012,[54] Creative purported to give notice of default to Jackson and Mahmoud, while demanding they pay the following amounts in full:

| | | | |
|---|---|---|---|
| 1. | 05/01/2006 | 09/05 Repair | $195.00 |
| 2. | 04/09/2007 | Plumbing Repair | 346.80 |
| 3. | 02/16/2010 | Royal Investment Svc | 575.00 |
| 4. | 07/01/2012 | Maintenance Fees | 220.00 |
| 5. | 08/01/2012 | Maintenance Fees | 250.00 |
| 6. | 08/16/2012 | Late Penalty | 25.00 |
| | | Total | $1,611.80[55] |

The first two items, purportedly for repairs dated 5/1/2006 for $195.00 and 4/9/2007 for $346.80, were self-evidently time-barred on the date of Creative's demand.[56]  According to its own records, Creative knew these amounts were time-barred:

> Owner has disputed balance prior to our taking over management in January 2006; additional charges have been assessed for plumbing repairs in 2007 and now 2010; Board does not want to refer to attorney at this time – **the majority of the balance has passed the statute of limitations** and will remain on the account until the property is sold (WO)  Owner is paying assessment late every month and is getting assessed a late fee; . . . . (emphasis added).[57]

---

[54] Creative Letter dated August 24, 2012, ROA.2013-14.

[55] *Id.*

[56] The relevant limitations period is four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE §16.035(b).

[57] Delinquent and Prepaid Resident Report dated 05/09/2012, ROA.2106.

The first three items all purport to be special assessments for repairs, though Jackson and Mahmoud were never given notice and an opportunity for hearing to dispute the assessments.[58]

The last item, a late charge, exceeded the $5.00 late charge authorized under the Declaration by 500%.[59]   Creative charged Jackson and Mahmoud a $25 late charge 21 times, including 13 times during 2012 and 2013, though no dedicatory instrument had been filed authorizing late charges above $5.[60]

### D.   Slaughter and FELCT

The Association retained Slaughter and FELCT to collect the debts claimed by De Moss against Mahmoud and Jackson.[61]   By letter dated October 8, 2012, Slaughter demanded payment of $2,171.80 in full from Jackson and Mahmoud or De Moss would seek non-judicial foreclosure.[62]

Slaughter's initial demand added the following charges to the amounts demanded by Creative in its August 24th letter:

1.  $25.00  - late charge for September 2012,
2.  $135.00 - attorney fees,
3.  $150.00 – fines,
4.  $250.00 Monthly Assessment for October 2012 (Creative having received a $250.00 payment from Jackson and

---

[58] Mahmoud Declaration at p.2, ROA.1859-60.

[59] Declaration at §5.1, ROA.1896 and discussion *supra* regarding late charges.

[60] Resident Transaction Report, ROA.2119-23.

[61] Slaughter and FELCT Motion for Summary Judgment at p.3, ROA.1125.

[62] October 8, 2012 Slaughter Letter, ROA.1991-92.

Mahmoud on August 23, 2012 to offset the August 2012 Monthly Assessment).[63]

The first page of Slaughter's October 8th demand conflicts with the notice of debtors' right to dispute the debt given on the second page.[64]   The first page reads, in relevant part:

> Unless such default is cured by the payment of the total amount of all amounts claimed (or this matter is otherwise settled) on or **before the expiration of thirty (30) days from and after the date hereof**, the Association shall seek nonjudicial foreclosure of the Lien through public auction as provided by §51.002 of the Texas Property Code.[65] (Emphasis added).

In contrast, the second page reads, in relevant part:

> UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF **WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS LETTER**, WE WILL ASSUME THE DEBT IS VALID.[66] (Emphasis added).

Slaughter's demand to pay on or before 30 days from the October 8th date of her letter expired before 30 days after receiving Slaughter's letter.

When Jackson and Mahmoud tendered payments on November 9, 2012, Slaughter rejected their payments stating:

---

[63]  See Slaughter letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2119-23.

[64] See Slaughter letter dated October 8, 2012, ROA.1991-92.

[65] *Id.*

[66] *Id.*

Per the Association's instructions, [your payments] are being returned as imperfect and improper tender of the amounts due and owing to the Association."[67]

No authority empowered Slaughter to reject payments tendered by Jackson and Mahmoud as "imperfect and improper tender," while continuing to exact late charges for the rejected payments. The Association testified that it never instructed Slaughter or FELCT to return Plaintiffs' checks, rendering Slaughter's statement to Jackson and Mahmoud demonstrably false.[68] Slaughter repeated her false statement, that she was returning payments "per the Association's instructions" in six additional letters to Jackson and Mahmoud.[69]

By forced sale on February 5, 2013, Slaughter, acting as trustee, sold the Property belonging to Jackson and Mahmoud for $18,500.00.[70] According to the Trustee's Deed signed "Kristi Slaughter, Trustee," Slaughter recites:

THAT I, the undersigned Trustee, as aforesaid, by virtue and power of authority vested in me as such Trustee for and consideration of the premises and EIGHTEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($18,500.00) in hand paid by Grantee . . . .[71]

On February 5, 2012, the total amount De Moss claimed to be owed by Jackson and Mahmoud amounted to $4,861.80.[72] Therefore, Slaughter, in her

---

[67] Letter from Slaughter dated November 12, 2012, ROA.1995.

[68] De Moss Response to Plaintiffs' Interrogatory No. 19, ROA.2058-59.

[69] *See* Slaughter letters, ROA.1794, 2006, 2015, 2023, 2034 and 2044.

[70] Trustee's Deed, ROA.1871-72.

[71] *Id*.

[72] Resident Transaction Report, ROA.1920.

capacity as trustee, received excess foreclosure proceeds belonging to Jackson and Mahmoud in the amount of $13,638.20.[73]  Having received the excess proceeds in her capacity as trustee, Slaughter was bound to deliver the excess proceeds to Jackson and Mahmoud without placing her personal interests before Jackson and Mahmoud.  Nevertheless, Slaughter refused to deliver the excess proceeds absent execution by Jackson and Mahmoud of a release from all claims against Slaughter and FELCT.[74]  In her capacity as "trustee," Slaughter held Jackson's and Mahmoud's excess proceeds hostage until more than one year after having received the proceeds.[75]

### E.  Property Value on the Foreclosure Date

According to Ashraf Mahmoud the property had a value of $80,000.00 on the date of foreclosure, all property taxes had been paid and no liens existed, except to the extent properly claimed by the Association.[76]

---

[73] Slaughter Affidavit, ROA.1153.

[74] Slaughter Letter dated June 14, 2013, ROA.1581.

[75] Slaughter Affidavit, ROA.1153.

[76] Declaration of Ashraf Mahmoud, ROA.2060-61.

## IX.   **SUMMARY OF THE ARGUMENT**

This case concerns the events leading up to and culminating in the February 5, 2013, foreclosure sale of the condominium unit belonging to Appellants Jackson and Mahmoud.

Jackson and Mahmoud sued De Moss, Creative, Slaughter and FELCT for violations of state and federal consumer protection/debt collection laws committed in connection with those collection and foreclosure activities.  These violations included making demands for payment and then foreclosing on the property based upon time-barred debts, improper assessments, and unauthorized charges, which resulted in actual damages.  Jackson and Mahmoud also claim Slaughter and FELCT's initial communication made demand for payment in a manner overshadowing and inconsistent with the disclosures required under federal law.

The District Court granted summary judgment that Jackson and Mahmoud take nothing on any of their claims.  However, the summary judgment proof shows that genuine issues of material fact exist with respect to each of the claims by Jackson and Mahmoud, and that the Trial Court committed errors of both fact and law in entering the final judgment.

The summary judgment record also shows that the Trial Court improperly overruled evidentiary objections asserted by Jackson and Mahmoud, and then based its summary judgment ruling largely upon that improperly admitted

evidence. Likewise, the summary judgment record shows that the Trial Court entered judgment on claims that were not presented in the summary judgment motions.

In entering the final judgment, the Trial Court overlooked or ignored the summary judgment evidence, misconstrued and misapplied established law, made factual determinations that were not supported by – and in some cases conflict with – the summary judgment evidence, and *sua sponte* entered judgment on matters that were no even presented in the summary judgment motions.

## X.     STANDARD FOR REVIEW

Where the district court grants summary judgment in favor of the defendant, the standard of review is *de novo*.[77]  If there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is proper.[78] A genuine dispute of material fact means that "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[79] Evidence is viewed in the light most favorable to the nonmovant.[80] The Court of Appeals should reverse the summary judgment if it determines that there was a genuine dispute of material fact or that the movant was not entitled to judgment as a matter of law.[81]

---

[77] *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir.2013).

[78] FED. R. CIV. P. 56(a).

[79] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[80] *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).

[81] *Thornton, Summers, Biechlin, Dunham & Brown, Inc. v. Cook Paint & Varnish*, 82 F.3d 114, 116 (5th Cir. 1996).

## XI.   ARGUMENT

### A.   Introduction

This case concerns the events surrounding the foreclosure sale of Jackson's and Mahmoud's condominium unit on February 5, 2013.

Jackson and Mahmoud claim that De Moss, Creative, Slaughter and her law firm, FELCT, made demands for payment and foreclosed on their property based upon time-barred debts, improper assessments, and unauthorized charges, which resulted in actual damages.[82]   Jackson and Mahmoud also claim Slaughter and FELCT's initial communication made demand for payment in a manner overshadowing and inconsistent with the disclosures required under federal law.

Jackson and Mahmoud seek relief against De Moss for breach of contract,[83] wrongful foreclosure,[84] and declaratory relief to determine their true obligations under the governing agreements and statutes.[85]   Jackson and Mahmoud seek relief against Creative for negligent misrepresentation.   Jackson and Mahmoud seek relief against Slaughter and FELCT under the FDCPA, TDCA, DTPA, for negligent misrepresentation and for breach of fiduciary duty.

---

[82] ROA.79-81.
[83] ROA.79-81.
[84] ROA.78-79.
[85] ROA.84-85.

The District Court granted summary judgment that Jackson and Mahmoud take nothing on any of their claims.[86] The summary judgment proof shows that genuine issues of material fact exist with respect to each of Jackson's and Mahmoud's claims and that De Moss, Creative, Slaughter and FELCT are not entitled to judgment as a matter of law.

### B.   <u>Evidentiary Objections</u>

De Moss, Creative, Slaughter and FELCT offered evidence attached to affidavits signed by Slaughter to show that by unilateral Board resolution never filed in the condominium records before 2014, De Moss increased the late charge in 2007 from $5 to $25 purportedly under authority of section 82.102(a)(12) of the Texas Property Code.[87]   Jackson and Mahmoud objected for lack of foundation, hearsay and legal conclusion grounds.[88]

---

[86] Memorandum Opinion and Order, ROA.2213-35.

[87] De Moss Summary Judgment Motion, ROA.1337. *See* TEX. PROP. CODE §82.102(a)(12) which provides, in relevant part, that:

> <u>Unless otherwise provided by the declaration</u>, the association, acting through its board, may: . . . impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given in accordance with Subsection (d), reasonable fines for violations of the declaration, bylaws and rules of the association. (Emphasis added).

[88] Jackson and Mahmoud Response to Summary Judgment Motion filed by Slaughter and FELCT, ROA.1634-35, and Response to Summary Judgment Motion filed by De Moss and Creative, ROA.2080-81.

The District Court overruled the objections to the Slaughter Affidavit,[89] concluding that Plaintiffs objections were waived.[90]  The District Court based this ruling on its determination that "Slaughter's Affidavit, however, is exactly the same affidavit that was previously filed by the defendants some time ago as support for their responses to the plaintiffs' motion for partial summary judgment."[91]   The record shows otherwise: the affidavit attached to the Slaughter/FELCT Motion for Summary Judgment" is dated March 26, 2015, [92] while the affidavit filed in response to Plaintiffs' Motion for Partial Summary Judgment was dated January 23, 2015.[93]  On its face, the affidavit attached to the "Attorney Defendants' Motion for Summary Judgment"[94] is not "exactly the same affidavit" that was before the Court in this summary judgment motion.  Plaintiffs' objections to the summary judgment evidence were timely and should have been sustained.

Moreover, the District Court's evidentiary ruling conflicts with this Court's standards for consideration of summary judgment cross-motions:

> We review rulings on motions for summary judgment de novo, applying the same standards prescribed for use by the district court.

---

[89] Memorandum Opinion and Order at n.1., ROA.2213.

[90] ROA.2213, n. 1

[91] ROA.2213, n. 1

[92] ROA.1149 – 1154

[93] ROA.722 – 727

[94] ROA.1113

> Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[95]

Even if the District Court could properly have considered the cross-motions for summary judgment as a single event, its conclusion that Plaintiffs waived their objections conflicts with the Local Rules in the Southern District of Texas:

> Objections to admissibility of exhibits must be made at least 7 days before trial by notifying the Court in writing of the disputes, with copies of the disputed exhibit and authority.[96]

Thus, whether the summary judgment record is limited to the Defendants' motions and the Plaintiffs' responses, or includes the cross motions for summary judgment by all the parties, the Plaintiffs' objections to Slaughter's affidavit were timely and properly asserted.

Slaughter's affidavit shows on its face that "[FELCT] and I have represented De Moss Owners Association, Inc. (the "Association") since 2010."[97]  Slaughter's affidavit does not assert that Slaughter is a custodian of business records, but is instead purportedly based upon her "personal knowledge."[98]  Notwithstanding the fact that Slaughter only began representing De Moss in 2010, her affidavit sets

---

[95] ***Shaw Constructors v. ICF Kaiser Engineers, Inc.***, 395 F.3d 533, 538-39 (5th Cir. 2004) (emphasis added).

[96] LR 46, Local Rules of the Southern District of TX.

[97] ROA.1149, ¶ 2

[98] ROA.1149, ¶ 1

forth how and why the late fees were increased from $5 to $25 in 2007[99] – three years before Slaughter began representing the Association.  Because Slaughter established conclusively that her relationship with the Association did not begin until 2010, Jackson and Mahmoud objected and moved to strike her testimony based on a lack of foundation of personal knowledge and as hearsay.[100]

This Court recognizes that "[u]nder Rule 103(a), appellate courts should reverse on the basis of erroneous evidentiary rulings only if a party's substantial rights are affected."[101]   In this case, the District Court's erroneous evidentiary ruling not only affected the Plaintiffs' rights, the erroneous ruling was dispositive of the entire action.  After overruling objections to Slaughter's affidavit, the District Court grounded its summary judgment ruling on the contents of that affidavit and accompanying exhibit – concluding that the $25.00 late charge underlying the foreclosure at issue in this case was properly imposed.[102]  But for the District Court's erroneous evidentiary ruling, no evidence supported the facts underlying the District Court's order.

---

[99] ROA.1150, ¶ 7

[100] ROA.2080, fn 4; ROA.2083; and ROA.1634

[101] *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994), citing *Munn v. Algee*, 924 F.2d 568, 573 (5th Cir.1991).

[102] Memorandum Opinion and Order, ROA.2213-15; ROA.2223 and 2223 n.7; ROA.2224; ROA.2229.

### C.  Breach of Contract by De Moss

#### 1. Plaintiffs' Performance

De Moss argued that plaintiffs' breach of contract claims failed as a matter of law.[103]  To prove breach of contract, plaintiffs must show: (1) existence of a contract, (2) plaintiffs performed, tendered performance, or were excused from performing their obligations, (3) defendant breached the contract, (4) defendant's breach caused injury to plaintiffs.[104]

No one disputes the existence of the contracts and agreements.[105]

Though Jackson and Mahmoud often paid their monthly assessments late, the Declaration does not classify mere delinquency of payment as a default or breach of the agreement.[106] Moreover, the summary judgment evidence shows that De Moss routinely accepted late payments in the manner contemplated for late payments under the Declaration.[107]

Moreover, performance was prevented or excused by (1) defective notices, which failed to provide the correct amount necessary for cure, and (2) rejection of

---

[103] De Moss Motion for Summary Judgment, ROA.1358-62.

[104] *Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W.3d 808, 813-14 (Tex.App.—Dallas 2013, no pet.).

[105] *See* De Moss Motion for Summary Judgment, ROA.1336-37; Declaration, ROA.1873-1915; By-Laws, ROA.1586-1604.

[106] Declaration, ROA.1376-1424.

[107] Declaration, ROA.1399; Transaction Report, ROA.2119-23.

payments tendered by Jackson and Mahmoud.[108]    Amply demonstrating that the defective notices prevented Jackson and Mahmoud from curing the default, Slaughter rejected as "imperfect and improper tender" numerous payment attempts by Jackson and Mahmoud."[109]    Even had Jackson and Mahmoud happened upon and tendered the proper delinquency amount, Slaughter would have rejected the payment as 'imperfect and improper tender' because the amount demanded by Slaughter included invalid amounts discussed *infra*.

In any event, the summary judgment proof shows Jackson and Mahmoud performed by payment of the full amount demanded by De Moss, including the invalid amounts, on the date of the foreclosure sale.[110]

### 2. Breach by De Moss - Inflated Late Charges

Even if Jackson's and Mahmoud's objections to the Slaughter affidavit were properly overruled, material fact issues exist and the District Court erred in concluding De Moss was entitled to judgment as a matter of law on Jackson's and Mahmoud's claims for breach of the governing agreements and statutes.[111]

---

[108] ***O'shea v. IBM Corp.***, 578 S.W.2d 844, 856 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

[109] Slaughter correspondence, ROA.2142-44, 2148-55, 2157-59, 2161-63, 2165-67, 2169-71.

[110] Letter from Slaughter dated February 6, 2013, ROA.1515.

[111] *See* De Moss Motion for Summary Judgment, ROA.1337, 1358-1362, and Memorandum Opinion and Order, ROA.2228-2230.

De Moss argued that by filing its Board Resolution in the condominium records on February 3, 2014, it authorized increased late charges in 2007 from $5 to $25 under authority of section 82.102(a)(12) of the Texas Property Code.[112]

De Moss' reliance on its purported resolution and section 82.102(a)(12) of the Texas Property Code violates both the governing agreements and Texas Property Code because it amends the declaration without approval by at least 90% of the Owners and was never recorded in the county condominium records prior to the events at issue in this case.  By its decision to grant summary judgment on the breach of contract claims, the District Court nullified all of the following contractual and statutory provisions:

  i.   Express language limiting authority granted by the statute upon which De Moss relies: "**Unless otherwise provided by the declaration** . . . ." (emphasis added).[113]

  ii.  The By-Laws expressly prohibit the Board from taking actions reserved to the Owners under the By-Laws or the Declaration.[114]

---

[112] De Moss Summary Judgment Motion, ROA.1337.

[113] *See* TEX. PROP. CODE §82.102(a)(12) which provides, in relevant part, that:

> Unless otherwise provided by the declaration, the association, acting through its board, may: . . . impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given in accordance with Subsection (d), reasonable fines for violations of the declaration, bylaws and rules of the association. (Emphasis added).

[114] By-Laws at §5.2, ROA.1593.

iii.   The Declaration reserves its amendment to approval by at least 90% of the Owners.[115]

iv.   The Declaration requires that its amendment be duly recorded.[116]

v.    The Texas Property Code, at all times relevant, requires that all dedicatory instruments be recorded.[117]

vi.   The Texas Property Code, since January 1, 2012, renders unrecorded dedicatory instruments a nullity.[118]

While admitting it never filed its "late fee" resolution before February 3, 2014, De Moss speciously inferred that it was not required to file dedicatory instruments before January 1, 2012.[119] The Declaration required filing of amendments *ab initio* and the Texas Property Code required filing of all dedicatory

---

[115] Declaration at §8.1, ROA.1913.

[116] *Id.*

[117] TEX. PROP. CODE §202.006(a) states as follows:

> A property owners' association shall file all dedicatory instruments in the real property records of each county in which the property to which the dedicatory instruments relate is located. (Added by Acts 1999, 76th Leg., ch. 1420, § 2, eff. Sept. 1, 1999).

[118] TEX. PROP. CODE §202.006(b) states as follows:

> A dedicatory instrument has no effect until the instrument is filed in accordance with this section. (Amended by Acts 2011, 82nd Leg., ch. 1142 (H.B. 1821), § 3, eff. Jan. 1, 2012).

[119] De Moss Motion for Summary Judgment, ROA.1337-38.

instruments since 1999.[120]   Only the Property Code's clarification, that unfiled

dedicatory instruments constitute a nullity, became effective January 1, 2012.[121]

### 3. **Breach by De Moss - Foreclosure Based on Time-Barred Debt**

The summary judgment proof shows De Moss, through its agents Creative

and Slaughter, made demands for payment "in full" and threatened foreclosure

based upon time-barred charges:   Creative's letter dated August 24, 2012,[122]

demands payment in full for repairs dated May 1, 2006 and April 9, 2007.[123]

Slaughter's letter, dated October 8, 2012, demands payment in full and threatens

foreclosure based upon Creative's balance, adjusted for payments and charges

between August 24 and October 8, 2012.[124]

The first two items demanded by Creative, purportedly for repairs dated

5/1/2006 for $195.00 and 4/9/2007 for $346.80, were self-evidently time-barred

---

[120] Declaration at §8.1, ROA.1913; and TEX. PROP. CODE §202.006(a) (Added by Acts 1999, 76th Leg., ch. 1420, § 2, eff. Sept. 1, 1999).

[121] TEX. PROP. CODE §202.006(b) (Amended by Acts 2011, 82nd Leg., ch. 1142 (H.B. 1821), § 3, eff. Jan. 1, 2012).

[122] Creative Letter dated August 24, 2012, ROA.2013-14.

[123] *Id.*

[124] See Slaughter letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2012 showing an increase to the August 24, 2012 balance resulting from following entries: $25.00 for late charge for September 2012, $135.00 for attorney fees, $150.00 for fines, $250.00 Monthly Assessment for October 2012 (Creative having received a $250.00 payment from Jackson and Mahmoud on August 23, 2012 to offset the August 2012 Monthly Assessment).

being more than 4 years past due on the date of Creative's demand.[125]  According to Creative's records, Creative knew and informed De Moss that these amounts were time-barred:

> Owner has disputed balance prior to our taking over management in January 2006; additional charges have been assessed for plumbing repairs in 2007 and now 2010; Board does not want to refer to attorney at this time – the majority of the balance has passed the statute of limitations and will remain on the account until the property is sold (WO)  Owner is paying assessment late every month and is getting assessed a late fee; sent ledger advising of same 1/11/2012 . . . .[126]

In Texas, the sale of real property under a power of sale in an instrument creating a real-property lien must be made not later than four years after the day the cause of action accrues.[127]  When the four-year limitations period expires, the real-property lien – and the power of sale to enforce that lien – become void.[128]

The District Court all but ignored Jackson's and Mahmoud's evidence of payment demands and foreclosure based upon time-barred debts, noting only in a footnote that "[t]he plaintiffs appear to allege that only $541.80 of the approx. $2,000 debt is potentially time-barred."[129]  The summary judgment evidence proved that, on behalf of De Moss, Creative and Slaughter demanded payment in

---

[125] The relevant limitations period is four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE §16.035(b).

[126] Delinquent and Prepaid Resident Report dated 05/09/2012, ROA.2106 (emphasis added).

[127] Tex. Civ. Prac. & Rem. Code §16.035(b).

[128] *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001), *citing* TEX. CIV. PRAC. & REM. CODE §16.035(d).

[129] ROA.2216 at n.3.

full and threatened foreclosure based on an amount that included $541.80 in time-barred debt.[130]

This Court mandates that "[i]n considering a motion for summary judgment, a District Court must consider all the evidence before it."[131]  Indeed, the District Court was required to "view the evidence at summary judgment in the light most favorable to" the Plaintiffs, as the non-movants in the summary judgment motions.[132]  Thus, the District Court abused its discretion in ignoring Jackson and Mahmoud's summary judgment evidence establishing that the foreclosure sale of their property was based on time-barred debts.[133]

The District Court's error in disregarding the Plaintiffs' summary judgment evidence and in failing to rule on the Plaintiffs' evidentiary objections form the basis for the District Court's judgment in this case.  Specifically, that more than 25% of the purported "debt" underlying the foreclosure sale was barred by limitations is significant because "liens are incidents of and inseparable from the debt."[134]  When collection of a debt is barred by the statute of limitations, the lien

---

[130] *See* Creative Letter dated August 24, 2012, ROA.2013-14; and October 8, 2012 Slaughter Letter, ROA.1991-92.

[131] *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980).

[132] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014).

[133] *Cushman v. Resolution Trust Co.*, 954 F.2d 317, 323 (5th Cir. 1992) ("We conclude that the district court erred in ignoring Mrs. Cushman's summary judgment evidence concerning both accounts."); *see also Kennett-Murray Corp. v. Bone*, 622 F.2d at 893.

[134] *University Sav. & Loan Ass'n v. Security Lumber Co.*, 423 S.W.2d 287, 292 (Tex. 1967).

securing that debt is unenforceable.[135]    The District Court misapplied the law by rendering summary judgment in the De Moss's and the District Court's judgment should be reversed.[136]

### 4. Breach by De Moss – Foreclosure Based on Repair Assessments Without Notice and Opportunity to be Heard

In contrast to the Monthly Assessment, the Declaration requires due notice to the Owner and opportunity for hearing to dispute imposition of a special assessment for repair charges (Repair Assessment).[137]    The Texas Property Code also requires notice and an opportunity to be heard before levy of a special assessment for repair charges.[138] The summary judgment proof shows De Moss

---

[135] *Id.*

[136] ***McClure v. Ashcroft***, 335 F.3d 404, 408 (5th Cir. 2003) ("A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts"); s*ee also*, ***FG Hemisphere Associates, LLC v. Republique du Congo***, 455 F.3d 575, 580 (5th Cir. 2006)

> We further conclude in each appeal that the district court misapprehended the effect of applying the exception to immunity, and that the challenged writs of garnishment issued as a direct result of a misinterpretation and misapplication of law. Accordingly, we reverse the October and December 2004 orders … ."

[137] Declaration at §1.1(s)(2), ROA.1880, which reads in relevant part:

> §1.1(s)(2) . . . The Association, after due notice and hearing, shall also have the authority to establish and fix a special assessment upon any Unit to secure the liability of the Owner of such Unit to the Association for any breach by such Owner of any of the provisions of this Declaration, which breach shall require an expenditure by the Association for repair or remedy.

[138] TEX. PROP. CODE §82.102(d) provides in relevant part:

> Before an association may charge the unit owner for property damage for which the unit owner is liable . . . the association shall give to the unit owner a written notice that: . . .

> > (3) describes the violation or property damage and states the amount of the proposed fine or damage charge;

made the special assessments for repairs without giving Jackson and Mahmoud notice and an opportunity for hearing to dispute the assessments.[139]

### 5. <u>Damages</u>

No one disputes that De Moss charged and retained the entire amount it received at the foreclosure sale: $4,861.80.[140]  Damages suffered by Jackson and Mahmoud resulting from breach of the agreements by De Moss include the inflated late charges, time barred debt, and repair assessments improperly obtained by De Moss through foreclosure of the Property, which are described *supra*.

Damages also consist of the equity lost by Jackson and Mahmoud as a result of the foreclosure.  The Property sold to a third party at the forced sale on February 5, 2013, for $18,500.00.[141] Jackson's and Mahmoud's summary judgment evidence proved the Property to be worth between $70,000.00 and $80,000.00 on the date of foreclosure, demonstrating substantial loss of equity.[142]

---

(4) states that not later than the 30th day after the date of the notice, the unit owner may request a hearing before the board to contest the fine or damage charge . . . .

[139] Mahmoud Declaration at p.2, ROA.1859-60.

[140] Slaughter letter dated February 6, 2013, ROA1515.

[141] Trustee's Deed, ROA.1871-72.

[142] Mahmoud unsworn declaration, ROA.2060-61; Mahmoud deposition, ROA.2115; Jackson deposition, ROA.2117.

### D.   Wrongful Foreclosure by De Moss

In its motion, De Moss argued that there was no evidence to show a defect in the foreclosure proceeding or an inadequate sales price and no causal connection between the defect and the inadequate sales price.[143]

'Failure to give proper notice of foreclosure' is properly characterized as a wrongful foreclosure claim.[144]  The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.[145]  In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."[146]  To succeed, the plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."[147] A procedural defect may occur when the mortgagee either "fails to comply with

---

[143] De Moss Motion for Summary Judgment, ROA.1345-46.

[144] *See Marsh v. Wells Fargo Bank,* 760 F.Supp.2d 701, 708 (N.D.Tex.2011); *Mitchell v. Deutsche Bank & Trust Co.,* No. 3:10–CV–1812–BH, 2012 WL 1670168, at *2 (N.D.Tex. May 14, 2012).

[145] *See In re Keener,* 268 B.R. 912, 921 (Bankr.N.D.Tex.2001) (citing 30 Tex. Jur.3d Deeds of Trusts and Mortgages § 177 (1998)).

[146] *Matthews v. JPMorgan Chase Bank, N.A.,* No. 3:11–CV–00972–M, 2011 WL 3347920, at *2 (N.D.Tex. Aug.1, 2011).

[147] *Hurd v. BAC Home Loans Servicing, LP,* No. 3:11–CV–1752–M, 2012 WL 1106932, at *15 (N.D.Tex. Mar.29, 2012) (citing *Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex.App.-Corpus Christi 2008, no pet.)).

statutory or contractual terms."[148] Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect."[149]

The Texas Property Code governs the sale of real property under a power of sale conferred under a contract lien and requires that the lienholder provide, *inter alia*, notice of opportunity to cure.[150] Every notice sent by De Moss, through its agents Creative and Slaughter, overstated the balance for which De Moss held a valid lien and never communicated the correct amount necessary to cure the default.[151]

Demonstrating that the defective notices prevented their curing the delinquency, Slaughter returned as "imperfect and improper tender" every attempt by Jackson and Mahmoud to tender payments."[152]  The Property sold to a third party at the forced sale on February 5, 2013, for $18,500.00.[153] Jackson's and Mahmoud's summary judgment evidence proved the Property to be worth between

---

[148] ***Matthews***, 2011 WL 3347920, at *2.

[149] ***Biggers v. BAC Home Loans Servicing, LP***, 767 F.Supp.2d 725, 729 (N.D.Tex.2011) (Fitzwater, C.J.).

[150] TEX. PROP. CODE §51.002(d); *see also* ***Ogden v Gibralter Sav. Ass'n.***, 640 S.W.2d 232, 233 (Tex.1982).

[151] Creative correspondence, ROA.2103-04; Slaughter correspondence, 2142-2175.

[152] Slaughter correspondence, ROA.2142-44, 2148-55, 2157-59, 2161-63, 2165-67, 2169-71.

[153] Trustee's Deed, ROA.1871-72.

$70,000.00 and $80,000.00 on the date of foreclosure, showing a gross inadequacy of the $18,500.00 sales price.[154]

### E.   Declaratory Judgment Against De Moss

De Moss argued in its motion that no claim or controversy existed to permit a claim for declaratory judgment.[155]  Jackson and Mahmoud seek declaratory relief to determine their rights and true obligations under the governing agreements and statutes.[156]  As described *supra*, De Moss's attempts to increase the late charges violated the following contractual and statutory provisions:

i.   Express language limiting authority granted by the statute upon which De Moss relies: "**Unless otherwise provided by the declaration** . . . ." (emphasis added).[157]

ii.   The By-Laws expressly prohibit the Board from taking actions reserved to the Owners under the By-Laws or the Declaration.[158]

iii.   The Declaration reserves its amendment to approval by at least 90% of the Owners.[159]

---

[154] Mahmoud unsworn declaration, ROA.2060-61; Mahmoud deposition, ROA.2115; Jackson deposition, ROA.2117.

[155] De Moss Motion for Summary Judgment, ROA.1365.

[156] ROA.84-85.

[157] *See* TEX. PROP. CODE §82.102(a)(12) which provides, in relevant part, that:

Unless otherwise provided by the declaration, the association, acting through its board, may: . . . impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given in accordance with Subsection (d), reasonable fines for violations of the declaration, bylaws and rules of the association. (Emphasis added).

[158] By-Laws at §5.2, ROA.1593.

[159] Declaration at §8.1, ROA.1913.

iv.   The Declaration requires that its amendment be duly recorded.[160]

v.    The Texas Property Code, at all times relevant, requires that all dedicatory instruments be recorded.[161]

vi.   The Texas Property Code, since January 1, 2012, renders unrecorded dedicatory instruments a nullity.[162]

Jackson and Mahmoud are entitled to declaratory adjudication enforcing the relevant provisions of the governing agreements and statutes and invalidating De Moss's attempts to increase the late charges without approval of the Owners and without filing the relevant dedicatory instruments.

### F.   Negligent Misrepresentation Against De Moss, Creative, Slaughter and FELCT

The District Court erred by granting summary judgment against Jackson and Mahmoud on their claims negligent misrepresentation.

---

[160] *Id.*

[161] TEX. PROP. CODE §202.006(a) states as follows:

A property owners' association shall file all dedicatory instruments in the real property records of each county in which the property to which the dedicatory instruments relate is located. (Added by Acts 1999, 76th Leg., ch. 1420, § 2, eff. Sept. 1, 1999).

[162] TEX. PROP. CODE §202.006(b) states as follows:

A dedicatory instrument has no effect until the instrument is filed in accordance with this section. (Amended by Acts 2011, 82nd Leg., ch. 1142 (H.B. 1821), § 3, eff. Jan. 1, 2012).

## 1. Creative, Slaughter and FELCT Did Not Seek Summary Judgment On Negligent Misrepresentation

Jackson and Mahmoud asserted claims for negligent misrepresentation against De Moss, Creative, Slaughter and FELCT.[163]   Only De Moss sought summary judgment on the negligent misrepresentation claim.[164]   Creative, Slaughter and FELCT did not seek summary judgment on the negligent misrepresentation claims against them.[165]

Nothing in the record indicates the District Court would consider summary judgment on the negligent misrepresentation claims against Creative, Slaughter and FELCT.  While District Courts can enter summary judgment *sua sponte*, they must provide the parties with at least "ten days notice to come forward with all of [the party's] evidence."[166]   In *John Deere Co. v. Am. Nat. Bank, Stafford*, this Court said :

> Since the district court relied on grounds not advanced by the moving party as a basis for granting summary judgment, and did not give proper notice to the Bank before granting judgment on such grounds, its judgment cannot be upheld on appeal.[167]

---

[163] First Amended Complaint, ROA.81, ¶¶ 85, 86.

[164] De Moss Motion for Summary Judgment, ROA.1362.

[165] *See* Slaughter and FELCT Motion for Summary Judgment, ROA.1113 – 1154, and Creative Motion for Summary Judgment, ROA.1362.

[166] *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995).

[167] *John Deere Co. v. Am. Nat. Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).

As in ***John Deere Co.***, the District Court's grant of summary judgment dismissing the negligent misrepresentation claims against Creative, Slaughter and FELCT must be reversed.[168]

## 2. <u>The Evidence Proves Negligent Misrepresentation</u>

Even if Creative, Slaughter and FELCT had moved for summary judgment on negligent misrepresentation, the District Court should not have granted summary judgment. The elements of negligent misrepresentation are:

    i.    (1) the representation was made by a defendant in the course of business, or in a transaction in which he has a pecuniary interest;

    ii.    the defendant supplied "false information" for the guidance of others in their business;

    iii.    the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

    iv.    the plaintiff suffered pecuniary loss by justifiably relying on the representation.[169]

There is no dispute that De Moss, Creative, Slaughter and FELCT communicated in the course of their business with Jackson and Mahmoud. De Moss falsely communicated that it was authorized to collect increased late charges

---

[168] *Id.*

[169] ***Federal Land Bank Ass'n of Tyler v. Sloane***, 825 S.W.2d 439, 442 (Tex.1991).

36

without filing its dedicatory instrument in the county condominium records.[170] Creative not only incorporated De Moss's inflated late charges into its demand for payment in full dated August 24, 2012,[171] Creative made demand for payment in full based upon time-barred debts that it knew were time-barred.[172]

Like Creative, Slaughter's demands for payment in full incorporated the invalid charges demanded by Creative,[173] and Slaughter falsely represented the following:

> Per the Association's instructions, [your payments] are being returned as imperfect and improper tender of the amounts due and owing to the Association."[174]

We know Slaughter's statement is false because the Association testified it never instructed Slaughter to return Plaintiffs' checks.[175]  Slaughter repeated the same false statement in six additional letters to Jackson and Mahmoud.[176]  Each of these false statements demonstrates a total lack of reasonable care or competence in obtaining or communicating the information.

---

[170] *See* breach of contract discussion regarding inflated late charges, *supra*.

[171] Creative Letter dated August 24, 2012, ROA.2013-14; Resident Transaction Report, ROA.2119-23.

[172] Delinquent and Prepaid Resident Report dated 05/09/2012, ROA.2106.

[173] *See* discussion *supra* regarding the basis for the amount demanded in Slaughter's letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2119-23.

[174] Letter from Slaughter dated November 12, 2012, ROA.1995.

[175] De Moss Response to Plaintiffs' Interrogatory No. 19, ROA.2058-59.

[176] ROA.1794, 2006, 2015, 2023, 2034 and 2044.

Finally, Jackson and Mahmoud suffered pecuniary loss by justifiably relying on the false representations of De Moss, Creative, Slaughter and FELCT because they were forced to rely on these representations through the foreclosure sale of their Property for $18,500,[177] representing a drastic loss in equity.[178]

### G.  FDCPA Violations by Slaughter and FELCT

#### 1. Introduction

Jackson and Mahmoud complained that Slaughter and FELCT violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a *et seq.* (hereinafter referenced by section) through their numerous debt collection communications with Jackson and Mahmoud that, *inter alia*,[179] which resulted in violations of sections 1692e, 1692f and 1692g.[180]

Jackson's and Mahmoud's FDCPA claims rest in part on Slaughter's demands for payment in full upon threat of foreclosure based on amounts that did not constitute a valid lien against the Property.[181]  The summary judgment proof showed Slaughter and FELCT sought to collect debts claimed by De Moss against

---

[177] ROA.2216

[178] Trustee's Deed, ROA.1871-72; Mahmoud unsworn declaration, ROA.2060-61; Mahmoud deposition, ROA.2115; Jackson deposition, ROA.2117.

[179] Plaintiff's First Amended Complaint at ¶46-52, ROA.71-73.

[180] Plaintiff's First Amended Complaint at ¶47, ROA.72.

[181] *See* argument regarding inflated late charges, time-barred debts and repair charges assessed without notice and opportunity for hearing, *supra.*

Mahmoud and Jackson.[182]  By letter dated October 8, 2012, Slaughter demanded payment of $2,171.80 in full on threat of foreclosure by De Moss.[183]  The balance demanded by Slaughter incorporated the balance demanded by Creative in its August 24, 2012 letter, adding a late charge, attorney fees, fines and a Monthly Assessment.[184]

Jackson's and Mahmoud's FDCPA claims also rely in part on Slaughter's false statements rejecting payments made by Jackson and Mahmoud, which prevented Jackson and Mahmoud from curing the delinquency.[185]  Without authority, Slaughter repeatedly rejected payments tendered by Jackson and Mahmoud as "imperfect and improper tender," thereby exacting additional late charges for the rejected payments and preventing Jackson and Mahmoud from curing the delinquency.[186]  De Moss testified it never instructed Slaughter to return the checks submitted by Jackson and Mahmoud, rendering Slaughter's statements to Jackson and Mahmoud demonstrably false.[187]  Slaughter repeated her false statement in six additional letters to Jackson and Mahmoud.[188]

---

[182] Slaughter and FELCT Motion for Summary Judgment at p.3, ROA.1125.

[183] October 8, 2012 Slaughter Letter, ROA.1991-92.

[184] Slaughter letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2119-23.

[185] ROA.1794, 2006, 2015, 2023, 2034 and 2044.

[186] Letter from Slaughter dated November 12, 2012, ROA.1995.

[187] De Moss Response to Plaintiffs' Interrogatory No. 19, ROA.2058-59.

[188] ROA.1794, 2006, 2015, 2023, 2034 and 2044.

## 2. Sections 1692e and 1692f Violations

In their Motion for Summary Judgment, Slaughter and FELCT challenged only the section 1692g claim, disputing the overshadowing and inconsistency defect in their initial communication with Jackson and Mahmoud.[189] Nowhere in their motion did Slaughter and FELCT challenge Jackson's and Mahmoud's claims under sections 1692e and 1692f.

Nevertheless, the District Court granted summary judgment on all FDCPA claims in favor of Slaughter and FELCT.[190]   The District Court's summary judgment dismissing the FDCPA claims under sections 1692e and 1692f against Slaughter and FELCT must be reversed.[191]  Even had Slaughter and FELCT asked for summary judgment on Jackson's and Mahmoud's claims under 1692e and 1692f, the District Court could not have ruled in their favor.

Federal courts uniformly find that threats to sue or filing suit to recover a time-barred debt violate the FDCPA's §1692e and §1692f.[192]  The summary

---

[189] Slaughter and FELCT Motion for Summary Judgment, ROA.1131-39.

[190] District Court Memorandum and Opinion, ROA.2218-20.

[191] *Id.*

[192] *See Castro v. Collecto, Inc.*, 634 F.3d 779, 783, 787 (5th Cir.2011); *see also Phillips v. Asset Acceptance*, LLC, 736 F.3d 1076, 1079 (7th Cir.2013) (explaining that a debt collector's filing of a time-barred lawsuit to recover a debt violates the FDCPA); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir.2011) (indicating that threatened or actual litigation to collect on a time-barred debt violates the FDCPA, but finding no FDCPA violation because the debt-collector never pursued or threatened litigation); *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir.2001) (same as *Huertas*, *supra*); cf. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 947–49 (9th Cir.2011) (affirming

judgment proof shows Slaughter's demands and threat of foreclosure were based in part on time-barred debt.[193]  Slaughter's repeated demands and threat to foreclose a lien void to the extent of $541.80 in time-barred charges violated §1692e(2), §1692e(5), §1692e(10) and §1692f(1) of the FDCPA.

Moreover, the District Court dismissed all Jackson's and Mahmoud's FDCPA claims because "the activity of foreclosure" is not "the collection of debt" within the meaning of the FDCPA.[194]  This Court long ago rejected the notion that enforcement of a security interest somehow exempts a debt collector from compliance with the FDCPA's proscriptions:

> We therefore hold that a party who satisfies §1692a(6)'s general definition of a "debt collector" is a debt collector for the purposes of the entire FDCPA **even when enforcing security interests**.[195]

> The FDCPA defines a debt collector as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

---

summary judgment in favor of the consumer after the debt collector filed a time-barred lawsuit to recover a debt); ***Herkert v. MRC Receivables Corp.***, 655 F.Supp.2d 870, 875 (N.D.Ill.2009) ("Numerous courts . . . have held that filing or threatening to file suit to collect a time-barred debt violates the FDCPA.").

[193] Creative Letter dated August 24, 2012, ROA.2013-14; See Slaughter letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2012 showing an increase to the August 24, 2012 balance resulting from following entries: $25.00 for late charge for September 2012, $135.00 for attorney fees, $150.00 for fines, $250.00 Monthly Assessment for October 2012 (Creative having received a $250.00 payment from Jackson and Mahmoud on August 23, 2012 to offset the August 2012 Monthly Assessment).

[194] District Court Memorandum and Opinion, ROA.2219.

[195] ***Kaltenbach v. Richards***, 464 F.3d 524, 529 (5th Cir. 2006) (emphasis added).

directly or indirectly, debts owned or due or asserted to be owed or due another.[196]

A cursory look at Slaughter's letters, on FELCT letterhead, establishes that Slaughter and FELCT are debt collectors under the FDCPA because they used the U.S. mail to send letters to Jackson and Mahmoud demanding payment for debts owed or due to another person.[197] Moreover, Slaughter and FELCT judicially admitted they regularly engage in the solicitation of debts for collection and regularly make contact with debtors for the purpose of collection or adjustment of debts.[198] The District Court's conclusion that Slaughter and FELCT are exempt from the FDCPA because their debt collection efforts resulted in a foreclosure sale is not supported by the facts or the law. Equally erroneous, the District Court concluded:

> [T]he defendants' actions cannot be deemed 'unfair' or 'unconscionable' under the FDCPA since the plaintiffs were in default at the time of the foreclosure sale and the attorney defendants relied on the Associations and/or Creative's representations as to the underlying basis for conduction the foreclosure sale, as permitted by law."[199]

Absolutely no authority supports the conclusion that a debt collector's acts "cannot be deemed "unfair" or "unconscionable" under the FDCPA" because the

---

[196] 15 U.S.C. §1692a(6).

[197] *See* correspondence from Slaughter to Jackson and Mahmoud, ROA.1991-2052.

[198] Slaughter and FELCT Motion for Summary Judgment, ROA.1123-24 ("Only the attorneys [are regularly engaged to solicit debts for collection, or regularly make contact with debtors for the collection or adjustment of debts]").

[199] District Court Memorandum and Opinion, ROA.2219-20.

debtors are in default.  Statutes should be construed to give each provision full effect and interpretations which render parts of a statute inoperative or superfluous are to be avoided.[200]  Except for debt collection based on non-existent or non-delinquent debts, the District Court's conclusion would render the entire FDCPA a nullity.

Neither can reliance by Slaughter and FELCT on the representations of De Moss or Creative form the basis for the District Court's conclusion.  Slaughter and FELCT failed to plead "bona fide error," pursuant to 1692k(c), and never raised the issue in their motion.[201]  The bona fide error defense was therefore waived.[202]  Moreover, "bona fide error" is an affirmative defense that requires the debt collector to prove:

> [The] violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error.[203]

Slaughter and FELCT presented no such argument or summary judgment proof.[204]  No basis in law or fact supports the District Court's conclusion that

---

[200] *Quarles v. St. Clair*, 711 F.2d 691, 701 - 7702 (5th Cir. 1983).

[201] Slaughter and FELCT First Amended Answer, ROA.1102-12; Motion for Summary Judgment, ROA.1113-45.

[202] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

[203] 15 U.S.C. §1692k(c).

[204] Slaughter and FELCT Motion for Summary Judgment, ROA.1113-45.

Slaughter and FELCT are protected by bona fide error from liability under the FDCPA.

### 3. Section 1692g Violations

The District Court also erroneously ruled that Slaughter and FELCT's initial communication with Jackson and Mahmoud did not overshadow or conflict with the disclosures required under §1692g(a).[205]

Slaughter's 1692g(a) disclosures were overshadowed and conflicted with other language in Slaughter's letter.[206]  On the first page, in relevant part, Slaughter demanded:

> Unless such default is cured by payment of the total amount of all amounts claimed (or this matter is otherwise settled) on or before the expiration of thirty (30) days from and after the date hereof, the association shall seek nonjudicial foreclosure of the Lien through public auction . . . .[207]

No notice appeared on the first page directing the debtors to the 1692g(a) disclosures on the second page,[208] where Slaughter advised, in relevant part:

> UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS LETTER, WE WILL ASSUME THE DEBT IS VALID."[209]

---

[205] District Court Memorandum and Opinion, ROA.2220.

[206] Plaintiff's First Amended Complaint at ¶46-52, ROA.71-73.

[207] Slaughter letter dated October 8, 2012, ROA.1991-92.

[208] *Id.*

[209] *Id.* (emphasis in original).

Unless Slaughter's letter were delivered on the date of the letter, and it was not,[210] Slaughter's demand for payment expired before the debtors' right to dispute the debt's validity.

A debt collector violates the FDCPA by failing to provide the information required by Section 1692g(a).[211]  Merely including the required notice in letters to consumers is not sufficient.[212]  The notice must also "be set forth in a form and within a context that does not distort or obfuscate its meaning."[213]  A debt collector may violate Section 1692g if other language in its communication "overshadow[s]" or is "inconsistent with" the statutorily-mandated notice.[214]  Confusion in a debt collection letter is evaluated under an "unsophisticated consumer" standard.[215]

Debt collectors are required, within five days of the initial communication regarding a debt, to provide consumers with a written notice that contains this information: (1) "the amount of the debt"; (2) "the name of the creditor to whom the debt is owed"; (3) a statement that unless the consumer "disputes the validity of

---

[210] Return receipt and Envelope attached to Slaughter letter dated October 8, 2012, ROA.1991-94 (return receipt showing that it was signed on October 10, 2012 and the envelope showing that postage cancellation date of October 9, 2012).

[211] *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012).

[212] *Id.*

[213] *Id.*

[214] 15 U.S.C. § 1692g(b); *McMurray*, 687 F.3d at 668.

[215] *McMurray*, 687 F.3d at 668 (*citing Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir.2004).

the debt" within 30 days, the debt collector will assume the debt is valid; (4) a statement that if the consumer notifies the collector that the consumer is disputing the debt in writing within the 30 day period, "the debt collector will obtain verification of the debt [from the creditor] ... and a copy of [the] verification ... will be mailed to the consumer . . . ."[216]

In **McMurray v. ProCollect, Inc.**, this Court stated that "[c]ourts have generally found contradiction or apparent contradiction of the §1692g notice where payment is demanded in a concrete period shorter than the 30-day statutory contest period."[217]   In addition, "[d]emands for 'immediate payment' or payment 'now' have also been found to appear to contradict the 30–day contest period notice, at least where their relationship to the 30–day window is not explained."[218] For example, demand that the debtor pay his debt "within one week of the date of this letter or face legal action" leaves up in the air what happens if he is sued on the eighth day and disputes the debt on the tenth day.[219] "He might well wonder what good it would do him to dispute the debt if he can't stave off a lawsuit."[220] "The net

---

[216] **McMurray**, 687 F.3d at 668 (*citing* 15 U.S.C. § 1692g(a)).

[217] **McMurray**, 687 F.3d at 670 (*citing* **Peter v. GC Servs. L.P.**, 310 F.3d 344, 349 (5th Cir.2002)).

[218] **McMurray**, 687 F.3d at 670.

[219] **Bartlett v. Heibl**, 128 F.3d 497, 501 (7th Cir. 1997) (cited by this Court in **_Peter_**, 310 F.3d at 349).

[220] **Bartlett**, 128 F.3d at 501.

effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish."[221]

"By contrast, statements that request payment or other actions with no time period specified have been found not to contradict the § 1692g notice."[222] This Court concluded the collection letter in *McMurry* did not conflict with the §1692g notice because it did not contain a demand for payment within a concrete period shorter than the 30-day statutory contest period.[223] This Court also concluded the collection letter in *McMurry* did not overshadow the §1692g notice because, among other things, the §1692g notice appeared on the first page of the letter.[224]

In contrast to the letter in *McMurry*, Slaughter's section 1692g(a) notice appears on the second page of the letter without a reference on the first page directing the debtors to the 1692g(a) notice on the second page.[225] Additionally, Slaughter demanded payment upon threat of foreclosure within 30 days of the 'date of the letter,' not 'receipt' of the letter.[226] Slaughter's payment deadline expired November 7, 2012, thirty days after October 8, 2012. The debtors' right to

---

[221] Id.

[222] *McMurray*, 687 F.3d at 670.

[223] *McMurray*, 687 F.3d at 670-71.

[224] *McMurray*, 687 F.3d at 667.

[225] Slaughter letter dated October 8, 2012.ROA.1790 – 1792.

[226] Slaughter letter dated October 8, 2012.ROA.1790 – 1792.

dispute the debt's validity expired November 10, 2012, thirty days after receipt.[227] Because the Slaughter's concrete payment deadline expired three days before Plaintiffs' right to dispute the debt, the letter contradicted Jackson's and Mahmound's right to dispute the debt.[228]  Because the Slaughter's 1692g(a) notice appeared on the second page of the letter without reference on the first page to the 1692g(a) notice on the second page, the letter also overshadowed Jackson's and Mahmoud's right to dispute the debt.[229]

In their motion, Slaughter and FELCT disingenuously argued that their letter was ambiguous because they demanded payment prior to the expiration of 30 days "on or after" the letter's date.[230]  Their proposition is misleading because their letter demands payment "<u>on or before</u> the expiration of thirty (30) days <u>from and after</u> the date [of the letter]."[231]  Nowhere does Slaughter's letter demand payment prior to the expiration of 30 days "on or after" the letter's date.  Whether payment was due 30 days "from" the date of the letter or "after" the date of the letter, the letter demanded payment on or before November 7, 2012, according to its plain language.[232]

---

[227] Slaughter letter dated October 8, 2012.ROA.1790 at 1793-94.

[228] *McMurray*, 687 F.3d at 670-71.

[229] Id.

[230] Slaughter and FELCT Motion for Summary Judgment, ROA.1134.

[231] Slaughter letter dated October 8, 2012, ROA.1991-92 (emphasis added).

[232] Id.

Slaughter and FELCT also argue that their 1692g disclosure corrects any confusion between the expiration of demand for payment and the expiration of the debtors' right to dispute the debt.[233]  However, Slaughter's 1692g disclosure simply advises the debtors that they can dispute the debt for 30 days after receipt of the letter, without separate mention of the conflicting deadline contained in the demand paragraph.[234]  Nothing in Slaughter's 1692g disclosure, indeed the entire letter, bridges the gap between the expiration of the demand for payment, November 7, 2012, and expiration of the debtors' right to dispute the debt, November 10, 2012.  Moreover, nothing in the motion filed by Slaughter and FELCT addresses the fact that their 1692g disclosure appears on page 2, while their demand for payment lies on page 1 without a reference to the important 1692g disclosures in the second page.[235]  The net effect of the juxtaposition of expiration of the demand for payment, November 7, 2012, and expiration of the debtors' right to dispute the debt, November 10, 2012, is to turn the required disclosure into legal gibberish."[236]

---

[233] Slaughter and FELCT Motion for Summary Judgment, ROA.1134-35.

[234] Slaughter letter dated October 8, 2012, ROA.1991-92.

[235] *Id*.

[236] *See* **Bartlett**, 128 F.3d at 501.

### H.   TDCA Violations by Slaughter and FELCT

Appellants claim Creative Management Company violated the TDCA by making demand and threatening foreclosure based upon time-barred debt and unauthorized charges.

Section 392.304(a)(8) of the Texas Finance Code prohibits debt collection by use a fraudulent, deceptive, or misleading representation that misrepresents the character, extent, or amount of a consumer debt.[237]   The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect."[238]   False or misleading statements or assertions violate the TDCA.[239]

A collection notice or balance statement misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of the debt under the TDCA.[240] The summary judgment proof shows Slaughter's demands and threat of foreclosure were based in part on time-barred debt.[241]   Slaughter's repeated

---

[237] TEX. FIN. CODE §392.304(a)(8).

[238] *Iglehart v. Wells Fargo Bank, N.A.*, 2014 WL 1759714, at *4 (E.D. Tex. Mar. 31, 2014).

[239] *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Texas 2013); *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) (*citing Kruse v. Bank of New York Mellon*, 936 F.Supp.2d 790, 792 (N.D.Texas 2013)).

[240]*Narvaez*, 757 F.Supp.2d at 632 (N.D. Texas 2013); and *Johnson v. Wells Fargo Bank*, NA, 999 F. Supp.2d 919, 933 (N.D. Tex. 2014).

[241] Creative Letter dated August 24, 2012, ROA.2013-14; See Slaughter letter dated October 8, 2012, ROA.1991-92, and Transaction Report, ROA.2012 showing an increase to the August

demands and threat to foreclose a lien void to the extent of $541.80 in time-barred charges violated §392.303(a)(2), §392.304(a)(8) and (§392.304(a)(19) of the TDCA.[242]

## I.  **DTPA Violations by Slaughter and FELCT**

The District Court concluded that Jackson and Mahmoud lack standing to sue under Tex. Bus. & Com. Code § 17.01 *et seq*., Texas Deceptive Trade Practices Act ("DTPA"), because they were not "consumers" as defined under the DTPA.[243]  That determination was erroneous as a matter of law.

The DTPA contains two enabling provisions for a private right of action. The District Court only considered the first provision, Section 17.50(a),[244] which does require "consumer" status to seek relief.  The District Court failed to address Jackson and Mahmoud's claims asserted under Section 17.50(h), which provides:

> **Notwithstanding any other provision of this subchapter**, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover .…[245]

That is important, because § 17.43 states:

---

24, 2012 balance resulting from following entries: $25.00 for late charge for September 2012, $135.00 for attorney fees, $150.00 for fines, $250.00 Monthly Assessment for October 2012 (Creative having received a $250.00 payment from Jackson and Mahmoud on August 23, 2012 to offset the August 2012 Monthly Assessment).

[242] Tex. Fin. Code §§392.303(a)(2), 392.304(a)(8) and 392.304(a)(19).

[243] ROA.2224 - 2225

[244] ROA.2224 - 2225

[245] Tex. Bus & Comm. Code §17.50(h) (emphasis added).

An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter.[246]

As the summary judgment record reflects, several of the Plaintiffs' claims were grounded in Chapter 392 of the Texas Finance Code.[247] That section states:

A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.[248]

Applying the plain language of the statute to the summary judgment evidence, Jackson and Mahmoud do have standing to recover under the DTPA by virtue of the tie-in provision quoted above. This issue was fully briefed and presented to the District Court.[249] If permitted to stand, the District Court's ruling effectively invalidates the tie-in provisions of TEX. BUS. & COM. CODE § 17.43, which is contrary to well-established law.[250]

The Texas Supreme Court has considered a similar tie-in provision and determined that the party suing through the DTPA tie-in provision needs to have "consumer" standing only under those DTPA sections that specifically reference

---

[246] TEX. BUS & COMM. CODE §17.43 (emphasis added).

[247] ROA.68 – 76.

[248] TEX. FIN. CODE §392.404(a).

[249] ROA.2093 - 2094

[250] *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....' "); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

consumer status and "consumer" status is not prerequisite to a DTPA claim under a tie-in provision of another statute:

Lack of consumer status, however, does not bar Casteel from bringing a cause of action under Article 21.21 for Crown's violation of DTPA section 17.46(b)(12). Section 17.46(b)(12) makes it a violation to "represent[ ] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." When brought as a claim under Article 21.21, this subsection does not require consumer status because it neither arises out of a consumer transaction explicitly, nor deals with the misrepresentation of "goods or services." We therefore reverse the court of appeals' judgment that Casteel cannot bring *any* DTPA-based Article 21.21 actions against Crown, and hold that Casteel is not required to be a consumer to bring an Article 21.21 claim for the violation of DTPA section 17.46(b)(12).[251]

Jackson and Mahmoud did not bring their DTPA claims as "consumers" of goods or services under the DTPA. They asserted their DTPA claims pursuant to the DTPA tie-in provision under Chapter 392 of the Texas Finance Code.[252] Thus, under the Texas Supreme Court's ruling in *Crown Life Ins. Co. v. Casteel*, Jackson

---

[251] *Crown Life Ins. Co.* v. *Casteel*, 22 S.W.3d 378, 387 (Tex. 2000) (citations omitted).
[252] ROA.68 – 76.

and the District Court should not have dismissed Jackson' and Mahmoud's DTPA claims.

### J.     Breach of Fiduciary Duty Against Slaughter and FELCT

The summary judgment proof established that Slaughter received excess foreclosure proceeds belonging to Jackson and Mahmoud in the amount of $13,638.20 and that she received the funds in her capacity as trustee.[253]   Having received the excess proceeds in her capacity as trustee, Slaughter refused to deliver the excess proceeds to Jackson and Mahmoud without a release from all claims against Slaughter and FELCT.[254]   Moreover, Slaughter threatened to file an interpleader suit implying that costs and her attorney fees would be extracted from the proceeds belonging to Jackson and Mahmoud.[255]

Having come into possession of the excess proceeds in her capacity as trustee, Slaughter's threats to file an interpleader action and refusal to return the funds belonging to Jackson and Mahmoud violated Slaughter's duty to exercise a high degree of care to conserve the money placed in her care and pay it only to those persons entitled to receive it.[256]

---

[253] Slaughter Affidavit, ROA.1153.

[254] Slaughter Letter dated June 14, 2013, ROA.1581; Slaughter Affidavit, ROA.1153

[255] Slaughter Letter dated June 14, 2013, ROA.1581.

[256] *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009); *Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied); *Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C*, 2014 WL 982858 (Tex. App.—Houston [1st Dist.], no pet.).

## XII.   **CONCLUSION AND PRAYER**

The Court should sustain Plaintiffs' objections to portions of the affidavit of Kristi Slaughter and exhibits thereto, submitted by the Lawyers in support of their motion, because they constitute inadmissible summary judgment proof and should be struck.

The Court should deny the Lawyers' Motion for Summary Judgment because they failed to meet their summary judgment burden by failing to point out proof in the record showing the absence of evidence to support Plaintiffs' claims.

The Court should also deny the Lawyers' Motion because they are not immune from liability for Plaintiffs' statutory and actual damages under the FDCPA, TDCA and DTPA.

The Court should also deny the Lawyers' Motion because material fact issues exist showing the Lawyers violated the FDCPA, TDCA and DTPA by their payment demands and foreclosure threats based on time-barred charges, assessments without notice and hearing, and inflated late fees, resulting in the forced sale of Plaintiffs' property and actual damages to Plaintiffs.  Material fact issues also exist showing the Lawyers' initial demand letter violated Plaintiffs' right to dispute the debt under the FDCPA by overshadowing and contradicting the notice of Plaintiffs right to dispute the debt.

The Court should also deny the Lawyers' Motion because material fact issues exist showing the Uniform Condominium Act does not authorize an increase to late fees or nonjudicial foreclosure in that doing so would invalidate the

condominium declaration in derogation of the procedures for amendment under the declaration.

WHEREFORE, Appellants, ASHRAF MAHMOUD and VALERIE JACKSON, pray that their objections be sustained and that, upon consideration of the facts and applicable law, the Court REVERSE the Final Judgment entered by the District Court and remand this case for further proceedings consistent with this Court's opinion. Appellants request all other relief to which they are justly entitled.

Respectfully submitted,

By: */s/ Lindsay L. Lambert*
LINDSAY L. LAMBERT
LAMBERT & JAKOB, PLLC
Texas Bar No.:  11844225
Federal ID No.:  15079
9800 Centre Parkway, Suite 645
Houston, Texas 77036
(713) 640-5700 – Telephone
(855) 678-5585 – Facsimile
LLambert@LJLawFirm.net

ATTORNEY FOR APPELLANTS
ASHRAF MAHMOUD AND
VALERIE JACKSON

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

✓ this brief contains 12,115 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

 this brief uses a monospaced typeface and contains [stat the number of] lines in text, excluding the parts of the brief exempted by FEC. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

✓ this brief has been prepared in a proportional typeface using Microsoft Word in Times New Roman 14 point font, with footnotes being included in Times New Roman 12 point font, *or*

 this brief has been prepared in a monospace typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

      <u>/s/ Lindsay L. Lambert</u>
     Attorney for Appellants,
     Valarie Jackson and Ashraf Mahmoud

     Dated: February 1, 2016

## **CERTIFICATE OF SERVICE**

On February 1, 2016, a copy of Appellants' Brief was served on all counsel of record via the Court's ECF system and on February 10, 2016, a corrected copy of Appellants' Brief was served on all counsel of record via email as follows:

Valarie J. Eisler
eissler@litchfieldcavo.com
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056

William L. Van Fleet, II
William S. Chesney, III
bvfleet@comcast.net
wchesney@felct.com
FRANK, ELMORE, LIEVENS,
CHESNEY &TURET, L.L.P.
9225 Katy Freeway, Suite 250
Houston, Texas 77024-1564

    /s/Lindsay L. Lambert
Lindsay L. Lambert