Case No. 15-20618

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

**ASHRAF MAHMOUD; VALERIE JACKSON,**
**Plaintiffs – Appellants**

**v.**

**DE MOSS OWNERS ASSOCIATION, INCORPORATED;**
**CREATIVE MANAGEMENT COMPANY;**
**FRANK, ELMORE, LIEVENS, CHESNEY, & TURET, L.L.P.;**
**KRISTI A. SLAUGHTER; KHOSROW ABTAHI,**
**Defendants – Appellees**

**Appeal from the United States District Court**
**Southern District of Texas**
**Case No. 4:13-cv-01758**

**APPELLANTS' REPLY BRIEF**

Lindsay L. Lambert
9800 Centre Pkwy, Ste 645
Houston, Texas  77036
LLambert@LJLawfirm.net
713.640.5700 tel
855.678.5585 fax

ATTORNEY FOR APPELLANTS

i

# I.    TABLE OF CONTENTS

I.   TABLE OF CONTENTS……………………………………….......…ii

II.  TABLE OF AUTHORITIES…………………………………………..iv

III. REPLY TO DE MOSS AND CREATIVE……………..…………..………1

    A.  Introduction…………………………………………………….1

    B.  Evidentiary Objections……………………………………….1

    C.  Breach of Contract……………………………..……………..3

        1.   Prior breach by De Moss and subsequent acts made
further performance impossible…………………….……4

        2.   Performance was made impossible and therefore excused..5

            a.   Performance was excused by De Moss's inflated
demand and rejection of payments…………………6

            b.   DeMoss's False "Payment Plan" Narrative…………7

        3.   Jackson and Mahmoud paid everything demanded……….8

        4. De Moss's contract construction contradicts Texas law…..9

            a.   The Declaration imposes the late charge assessment
directly, without the Association's or Board's
authority…………………………………………10

            b. The Texas Property Code does not amend the
Declaration…………………………………………12

            c. De Moss's failure to file the proper dedicatory
instrument…………………………………………….13

        5.   De Moss's demand for time-barred debt…………………13

        6. Fact issues preclude summary judgement…………...……14

D. Wrongful Foreclosure……………………...………………..15

    1.  Continued possession is irrelevant……………….………15

    2. Defective Notice………………………………….……….16

    3. Multiple Defects in the Foreclosure Proceedings………..16

    4. Inadequate Selling Price…………………………………..17

E.  Negligent Misrepresentation…………………..………………18

F.  Deceptive Trade Practices Act…………………….…………..………19

G. Texas Debt Collection Act………………….………………………20

IV.     SLAUGHTER AND FELCT…………………….………………22

A.  Evidentiary Objections…………………………………….………22

B. FDPCA claims against FELCT and Slaughter…………..……….…22

C. Texas Debt Collection Act claims………………………….……26

V.     PRAYER………………………………………………….………27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) …………..…..28

CERTIFICATE OF SERVICE…………………………………….………29

## II.    TABLE OF AUTHORITIES

### CASES

*Alanis v. US Bank Nat'l Ass'n*, 2015 WL 6694005, at \*11 (Tex. App.—Houston
[1st Dist.] Nov. 3, 2015, no pet.) .........................................................................15

*Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996) 10, 17

*Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no
writ).......................................................................................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d
265 (1986) .............................................................................................................9

*Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d
443 (2009) .............................................................................................................20

*Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387 (Tex. 2000)...........................20

*Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1983)....10

Exxon Corp. v. St. Paul Fire & Marine Ins. Co., 129 F.3d 781 (5th Cir. 1997) .....18

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) .............................20

*Hibbs v. Winn,* 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004)...........20

*In re Keener*, 268 B.R. 912, 922 (Bankr. N.D. Tex. 2001)......................................10

*Janes v. CPR Corp.*, 623 S.W.2d 733, 738 (Tex. App.—Houston [1st Dist.] 1981,
writ ref'd n.r.e.)....................................................................................................15

*Johnson v. Wells Fargo Bank*, NA, 999 F. Supp.2d 919, 933 (N.D. Tex. 2014) 21

*Kimberly Dev. Corp. v. First State Bank of Greens Bayou*, 404 S.W.2d 631, 636
(Tex. Civ. App.—Houston 1966, writ ref'd n.r.e.) ..............................................10

*LeCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 (5th Cir. 1982)..................................18

iv

*Manuoz v. Int'l Alliance of Theatrical State of Employees & Moving Picture Mach.*
   *Operators* ...........................................................................................................1

**Matador Drilling Co. v. Post**, 662 F.2d 1190, 1195 (5th Cir.1981) ..........................9

**Metcalf v. Deutsche Bank Nat. Trust Co.**, 3:11-CV-3014-D, 2012 WL 2399369,
   at *5 (N.D. Tex. June 26, 2012)...........................................................................13

**Morton/Southwest Co. v. Resolution Trust Corp.**, 25 F.3d 1043 (5th Cir. 1994)
   (unpublished opinion) ..........................................................................................10

**Narvaez v. Wilshire Credit Corp.**, 757 F.Supp.2d 621, 632 (N.D. Texas 2013)....21

**Petersen v. Black**, 980 S.W.2d 818, 823 (Tex.App.—San Antonio 1998, no pet.)15

**Powell v. Stacy**, 117 S.W.3d 70, 73 (Tex. App.—Fort Worth 2003, no pet.).........16

**Shaw Constructors v. ICF Kaiser Engineers, Inc.**, 395 F.3d 533, 538-39 (5th Cir.
   2004) ....................................................................................................................22

**Shaw Constructors v. ICF Kaiser Engineers, Inc.**, 395 F.3d 533, 538-39 (5th Cir.
   2004) (emphasis added) .......................................................................................22

**Slaughter v. Qualls**, 162 S.W.2d 671, 675 (Tex.1942)..........................................17

**Tarrant Sav. Ass'n v. Lucky Homes, Inc.**, 390 S.W.2d 473, 475 (Tex. 1965) ......15

**Uhlir v. Golden Triangle Dev. Corp.**, 763 S.W.2d 512, 514 (Tex.App.—Fort
   Worth 1988, writ denied)......................................................................................9

**Wells Fargo Bank, N.A. v. Robinson**, 391 S.W.3d 590, 594 (Tex. App.—Dallas
   2012, no pet.) .......................................................................................................15

**Williams v. Wells Fargo Bank, N.A.**, 560 F. App'x 233, 241 (5th Cir. 2014) .......21

## STATUTES

15 U.S.C. § 1692a ...................................................................................................22

15 U.S.C. § 1692g...................................................................................................25

15 U.S.C. §1692e & f..............................................................................................24

TEX. BUS & COMM. CODE § 17.43 ...........................................................................19

Tex. Bus & Comm. code § 17.50(h)........................................................................19

Tex. Bus. & Com. Code § 17.43..............................................................................20

Tex. Bus. & Com. Code §§ 17.01 – 17.926............................................................19

Tex. Fin. Code § 392.301........................................................................................26

TEX. FIN. CODE § 392.404(a) ..................................................................................19

TEX. PROP CODE §202.006(a) .................................................................................13

TEX. PROP CODE §202.006(b). ...............................................................................13

TEX. PROP. CODE §202.001(1). ..............................................................................13

TEX. PROP. CODE §202.006(a). ................................................................................9

TEX. PROP. CODE §202.006(b). ..............................................................................13

Tex. Prop. Code §82.102(a). ...................................................................................12

## **RULES**

FED. R. CIV. P. 56(a) and (c) ...................................................................................26

FED. R. CIV. P. 56(c)(4)............................................................................................2

***Steele v. Green Tree Servicing, LLC***, 2010 WL 3565415, at *5 (N.D. Tex. Sept. 7,

  2010), *aff'd sub nom.* ***Steele v. Green Tree Servicing, L.L.C.***, 453 Fed. Appx.

  473 (5th Cir. 2011)................................................................................................6

## III.    Reply to De Moss and Creative

### A. Introduction

De Moss and Creative argue that De Moss was entitled to increase late charges without 90% owner approval and without filing the dedicatory instruments in the real property records. They don't deny that De Moss overstated its payment demands with time-barred charges and disputed repair charges assessed without proper notice.  Having foreclosed based upon their overstated balance, De Moss and Creative do not deny retaining the entire overstated balance.

De Moss and Creative posit that their overstated demands and retention of ill-gotten proceeds are unassailable because Jackson and Mahmoud frequently paid their monthly assessments late.  Their arguments fail because Jackson and Mahmoud were current in their correctly stated account balance as of August 2012.

### B. Evidentiary Objections

De Moss and Creative argue that two affidavits which were executed on different dates are "exactly the same."[1]  Their argument appears to be that – but for the differences on the face of the document – it is the same document.  In truth, the affidavit relied on by the Trial Court did not exist until De Moss and Creative filed their summary judgment motion, and Jackson and Mahmoud timely objected.[2]

De Moss and Creative cite *Manuoz v. Int'l Alliance of Theatrical State of Employees & Moving Picture Mach. Operators*[3]  to argue that Jackson and

---

[1] De Moss's brief, pg. 18.
[2] Jackson and Mahmoud Response to Summary Judgment Motion filed by Slaughter and FELCT, ROA.1634-35, and Response to Summary Judgment Motion filed by De Moss and Creative, ROA.2080-81.
[3] 563 F.2d 205 (5th Cir. 1997).

Mahmoud waived their objections by not re-asserting those same objections during oral argument. However, the evidentiary objections in *Manuoz* were deemed waived because the only time the evidence was offered was during oral argument and both parties cited that same evidence.[4] In this case, Jackson and Mahmoud timely objected to Slaughter's affidavit and requested that the Trial Court sustain their objection.[5]

De Moss and Creative also argue that Slaughter's affidavit was admissible because, as a party to the litigation, "it can certainly be inferred that she became familiar with the documents underlying the Mahmouds' claims."[6] That argument fails because "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] **must be made on personal knowledge** … ."[7] Having been associated with De Moss only since 2010,[8] Slaughter lacked personal knowledge required to testify regarding changes to the Declaration that occurred in 2007.[9]

Finally, De Moss and Creative argue that the issue regarding whether Slaughter's affidavit was "exactly the same" as previously filed were waived because those arguments were not raised in the Trial Court.[10] The affidavit being "exactly the same" was not mentioned in their motion for summary judgment, but was created by the Trial Court when it entered summary judgment.[11]

---

[4] *Id*. at 214.
[5] ROA.1634-35 and ROA.2080-81.
[6] De Moss's brief, pg. 20.
[7] FED. R. CIV. P. 56(c)(4) (emphasis added).
[8] ROA 1369.
[9] ROA 1370.
[10] ROA 1555.
[11] ROA 2213, fn. 1.

## C. **Breach of Contract**

De Moss argues Jackson's and Mahmoud's breach of contract claims were correctly dismissed because Jackson and Mahmoud failed to perform under the governing agreements and were not excused from performance, nor was performance made impossible. De Moss also argues that it did not breach any governing agreements and that its demand for time-barred debt is not actionable.[12]

De Moss never raised the issue of contract performance in its summary judgment motion and Jackson and Mahmoud never received notice that the district court would grant summary judgment, *sua sponte*, on that issue.[13] The district court concluded that Jackson and Mahmoud's breach of contract claim was barred by lack of performance only because "they were late multiple times in paying their monthly assessments . . . ."[14] Jackson and Mahmoud provided evidence showing the district court ignored De Moss's prior breach, the overstated balance demanded by De Moss on August 24, 2012,[15] and ignored that De Moss rejected every payment thereafter on grounds that Jackson and Mahmoud failed to pay the entire overstated balance.[16]

Having failed to raise the issue in its summary judgment motion, De Moss now attempts to expand on the Trial Court's conclusion by claiming Jackson and Mahmoud were always in breach of the Declaration.[17] De Moss argues that

---

[12] Appellee's Brief, pp.22-32.
[13] See De Moss Motion for Summary Judgment (Breach of Contract), ROA.1358-1362.
[14] Memorandum Opinion, ROA.2258.
[15] Appellants' Brief, p.9-10.
[16] Appellants' Brief, p.22-23.
[17] Appellee's Brief, p.24.

because section 3.11 requires strict compliance with the Declaration and By-Laws, Jackson and Mahmoud's contract claim is barred.[18]

The district court's conclusion that Jackson and Mahmoud breached the governing agreements ignored Jackson and Mahmoud's summary judgment evidence showing their account was current on August 24, 2012.[19]  From that date through foreclosure on February 5, 2013, De Moss was in breach of the governing agreements by demanding payment of improper charges while returning every payment as "imperfect and improper tender."[20]

### 1) Prior breach by De Moss and subsequent acts made further performance impossible.

De Moss's reliance on section 3.11 of the Declaration depends on its false assumption that Jackson and Mahmoud were always in default – contrary to summary judgment evidence.   By Creative's August 24, 2012 letter, De Moss claimed Jackson and Mahmoud were delinquent $1,611.80 and demanded full payment upon threat of foreclosure.[21]  That amount was overstated,[22] as Jackson and Mahmoud's account should have been credited $1,686.80:

---

[18] Nothing in the Declaration, including section 3.11, defines late payments as a default or a breach of contract and it is telling that De Moss supplied language they wish were contained in their quote of section 3.11, "[i.e., a breach]."  *See* Appellee's Brief, p.24.

[19] Creative's letter dated August 24, 2012, ROA.2103-04 (Appellant's Record Excerpt at tab 10 pp.1-2).

[20] Slaughter correspondence, ROA.2142-44, 2148-55, 2157-59, 2161-63, 2165-67, 2169-71.

[21] Creative's letter dated August 24, 2012, ROA.2103-04 (Appellant's Record Excerpt at tab 10 pp.1-2).

[22] Appellants' Brief, p.9-10.

1. $250.00    payment received August 23, 2012 not reflected in the demand;[23]

2. $320.00    16 instances of inflated late charges ($20 times 16 instances);[24]

3. $541.80    time barred charges ($195.00 05/01/2006 + $346.80 04/09/2007);[25]

4. $575.00    disputed repair charge without proper notice.[26]

Thus, the account should have reflected a $75.00 credit balance after applying $1,686.80 in credits against the $1,611.80 demanded.[27]   Accordingly, Jackson and Mahmoud were not in breach on August 24, 2012.  Instead, De Moss was in breach, and that breach continued through the foreclosure sale, whereupon De Moss retained every penny it demanded.[28]

### 2) Performance was made impossible and therefore excused.

De Moss's rejection of payments tendered by Jackson and Mahmoud after August 2012, ten payments over five months, excused performance.  That rejection was based on a failure to pay invalid assessments.[29]  As explained *infra*, De Moss's

---

[23] *See* Creative's Resident Transaction Report showing a $1,361.80 balance on August 23, 2012 upon receipt of $250.00, ROA.2123 (Appellant's Record Excerpt at tab 9 p.5).

[24] Creative's Resident Transaction Report, ROA.2120-23 (Appellant's Record Excerpt at tab 9 pp.2-5).

[25] Creative's letter dated August 24, 2012, ROA.2103-04 (Appellant's Record Excerpt at tab 10 pp.1-2).

[26] Creative's letter dated August 24, 2012, ROA.2103-04 (Appellant's Record Excerpt at tab 10 pp.1-2); and Declaration of Ashraf Mahmoud, ROA.2060-61.

[27] De Moss also argues that Jackson and Mahmoud refused to pay late fees assessed by the association. Appellee Brief, p.25.  The period to which De Moss refers is unclear, however the $75.00 credit balance remaining on August 24, 2012, more than offset any late charges properly assessed through the foreclosure date.

[28] Letter from Slaughter dated February 6, 2013, ROA.1515.

[29] Three checks returned by Slaughter letter dated November 12, 2012, ROA.1995-97; three checks returned by Slaughter letter dated November 20, 2012, ROA.2006-13; one check returned by Slaughter letter dated November 28, 2012, ROA.2015-17; one check returned by Slaughter letter dated December 26, 2012, ROA.2023-25; one check returned by Slaughter letter dated January 4, 2013, ROA.2034-36; and one cashier's check returned by Slaughter letter dated January 30, 2013, ROA.2044-46.

false "payment plan" narrative fails to overcome De Moss's actions preventing performance by Jackson and Mahmoud.

### a. Performance was excused by De Moss's inflated demand and rejection of payments

De Moss cites **Steele v. Green Tree Servicing, LLC**, for the proposition that a debtor may not complain that his performance is excused by the creditor's incorrect demand amount.[30] However, the debtor in **Steele** made no payments for an entire year.[31] Therefore, the court in **Steele** held no reasonable jury could find the debtor's failure to attempt payment could be excused.[32] In contrast, Jackson and Mahmoud were current in their account as of August 2012, and they tendered ten payments during the five month period between August 2012 and the foreclosure on February 5, 2013.[33] Unlike the creditor in **Steele**, De Moss rejected every payment.[34]

Unlike **Steele**, a reasonable trier of fact in this case could easily conclude that payments from Jackson and Mahmoud would always be rejected absent payment of the entire balance demanded, including the overstated, disputed and

---

[30] **Steele v. Green Tree Servicing, LLC**, 2010 WL 3565415, at *5 (N.D. Tex. Sept. 7, 2010), *aff'd sub nom.* **Steele v. Green Tree Servicing, L.L.C.**, 453 Fed. Appx. 473 (5th Cir. 2011).

[31] **Id**. at *4-5.

[32] **Id**.

[33] Check nos. 1346, 1347 and 1348 for $250 each, returned by Slaughter letter dated November 12, 2012, ROA.1995-97; check nos. 1352, 1353, and 1355 for $250 each, returned by Slaughter letter dated November 20, 2012, ROA.2006-13; check no. 1350 for $250, returned by Slaughter letter dated November 28, 2012, ROA.2015-17; check no. 1395 for $250, returned by Slaughter letter dated December 26, 2012, ROA.2023-25; check no. 1396 for $250, returned by Slaughter letter dated January 4, 2013, ROA.2034-36; check no. 9876606728 for $240, returned by Slaughter letter dated January 30, 2013, ROA.2044-46.

[34] **Id**.

inflated amounts demanded.  Therefore, a reasonable trier of fact could find that Jackson and Mahmoud were excused from performance.

### b. De Moss's False "Payment Plan" Narrative

De Moss argues that its offer of a "payment plan" negates its breach resulting from invalid charges and its rejection of payments.  De Moss's "payment plan" narrative relies entirely on misstating the evidence as follows:

> The Mahmouds were repeatedly offered the opportunity **to submit a written payment plan** to the Board for approval, but they never did.[35] (Emphasis added)

De Moss concludes that "the entire foreclosure process could have been avoided had the Mahmouds made efforts to submit and obtain approval for a payment plan."[36]  Contrary to that assertion, the "offer" actually communicated to Jackson and Mahmoud never invited them to "submit a written payment plan."  Rather, De Moss invited a three step sequence prerequisite to acceptance and execution of a written payment plan:

1. "You must **submit a written request for a payment plan** to our offices."

2. "Upon receipt, **your written request** shall be submitted to the board for its review and decision."

3. **"If a payment plan is approved, same will be reduced to a written agreement** that you must sign and return to our law firm . . . ."[37]

---

[35] *See*, e.g., De Moss's brief, pgs. 15-16.
[36] *Id*. at 16.
[37] *See*, e.g., Slaughter letter dated November 12, 2012 (emphasis supplied), ROA.1238-39 (Appellant's Record Excerpt at tab 8).

It is the first step, "**submit a written request for a payment plan,**" that De Moss misrepresents as "**submit a written payment plan**."  Nowhere in its communications did De Moss instruct Jackson and Mahmoud to "submit a written payment plan."

The first two instructions contemplate the board's review of "your written request," not review of "your payment plan."  After approval, the final instruction informs Jackson and Mahmoud that the payment plan "will be reduced to written agreement" for signatures.  Had the offer contemplated submission of a "written payment plan" for approval, no need would exist to reduce the plan to writing as expressed in the final instruction.

Valerie Jackson submitted a written request by letter dated November 17, 2012: "Please forward us a breakdown of all fees so that we can review these and set up a plan for the remaining amount owed,"[38] of which De Moss's attorneys acknowledged receipt on November 20, 2012.[39]  No one disputes that De Moss's attorneys never submitted Jackson's request to the Board for approval.

De Moss is stuck with the offer that it made and its insistence that Jackson and Mahmoud "failed to submit a written payment plan" is misleading.

### 3) Jackson and Mahmoud paid everything demanded.

De Moss argues that payment in full out of the foreclosure proceeds does not constitute performance by Jackson and Mahmoud,[40] and that Jackson and

---

[38] Letter dated November 17, 2003, from Valerie Jackson, ROA.2004.

[39] Letter dated November 20, 2012, from Kristi Slaughter ("[O]ur law firm received your letter dated November 17, 2012"), ROA.2006-07.

[40] De Moss's brief, pg. 16.

Mahmoud waived proof of performance.[41]   According to De Moss, it is entitled to retain invalid amounts collected at the foreclosure sale because Jackson and Mahmoud frequently made their payments late.[42]

As discussed *supra*, De Moss did not seek summary judgment on the issue of performance,[43] and Jackson and Mahmoud could not be expected to respond to an issue for which they had no notice.[44]   Moreover, De Moss cannot dispute that the summary judgment proof shows De Moss was paid out of the foreclosure proceeds every penny it demanded.[45]   Texas law deems full payment to constitute performance.[46]

### 4) De Moss's contract construction contradicts Texas law.

De Moss argues it was authorized to increase late charge assessments from $5 to $25 without approval by 90% of the Owners, as required by the Declaration,[47] and without filing instruments in the real property records reflecting the change, as required by both the Declaration[48] and the Texas Property Code.[49] De Moss claims its authority is implied based on the absence of express provisions

---

[41] ***Id***.

[42] ***Id***.

[43] See Moss Motion for Summary Judgment (Breach of Contract), ROA.1358-1362.

[44] *See **Celotex Corp. v. Catrett***, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986) (District courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence).

[45] De Moss's brief, pg. 16.

[46] A party substantially performs if it satisfies the essential elements of the contract and any defect in its performance does not destroy the purpose of the contract. *See **Uhlir v. Golden Triangle Dev. Corp.***, 763 S.W.2d 512, 514 (Tex.App.—Fort Worth 1988, writ denied); ***Matador Drilling Co. v. Post***, 662 F.2d 1190, 1195 (5th Cir.1981).

[47] Declaration at §8.1, ROA.1913.

[48] Declaration at §8.1, ROA.1913.

[49] TEX. PROP. CODE §202.006(a).

requiring Owner approval to increase the late charge assessment[50] and because the late charge is an "assessment" that the Board is tasked to determine and the Association is authorized to levy.[51]

Texas law requires strict construction of lien instruments with a power of sale.[52] The Association lacks authority to increase the late charge assessment because nothing in the Declaration expressly grants such authority.[53] Moreover, the Declaration reserves authority to the Owners to amend the Declaration, upon approval by 90% of the Owners.[54]

### (a) The Declaration imposes the late charge assessment directly, without the Association's or Board's authority.

The late charge assessment imposed by the Declaration[55] is one of several assessment categories authorized under the Declaration. The amount of the late charge assessment is *not* determined by the Association or imposed on all Owners equally,[56] nor is it determined by the Association or imposed after notice and opportunity to be heard.[57] Instead, the *sui generis* late charge assessment is

---

[50] De Moss's brief, pg. 29; Memorandum Opinion, ROA.2252.

[51] De Moss's brief, pg. 29; Memorandum Opinion, ROA.2252.

[52] *Kimberly Dev. Corp. v. First State Bank of Greens Bayou*, 404 S.W.2d 631, 636 (Tex. Civ. App.—Houston 1966, writ ref'd n.r.e.); *In re Keener*, 268 B.R. 912, 922 (Bankr. N.D. Tex. 2001); *Morton/Southwest Co. v. Resolution Trust Corp.*, 25 F.3d 1043 (5th Cir. 1994) (unpublished opinion); *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1983); *see also Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996).

[53] Declaration §§ 5.1, 5.2 and 5.3, ROA.1896-97.

[54] Declaration at §8.1, ROA.1913.

[55] Declaration §5.1, ROA.1896.

[56] Declaration §5.1, ROA.1896.

[57] Declaration §5.1, ROA.1896.

established as $5.00 and imposed directly by the Declaration without participation by the Association or Board.[58]

While section 5.1 of the Declaration recognizes the estimated assessments imposed by the Association to meet Common Expenses are to be paid by all owners, the section directly imposes the late charge assessment against the individual Owner automatically for his late payment.[59]  Section 5.1 expresses no authority in favor of the Association to determine or change the $5.00 late charge.[60]  The rule of strict construction precludes De Moss from expanding section 5.1 to authorize imposition or changes to the late charge assessment.[61]

Strict construction also precludes De Moss's attempt to "clarify" its authority to increase the late charge under section 5.2 of the Declaration.[62] Nothing in section 5.2 enlarges the Association's authority beyond levy of the Common Assessment.[63]  Section 5.2 is a limiting provision that lists the "exclusive purposes" for which assessments levied by the Association shall be used.[64]

Similarly, section 5.3 of the Declaration requires the Board to determine the assessment for Common Expenses "based upon the cash requirements necessary to provide for the payment of all estimated expenses growing out of or connected

---

[58] Declaration §5.1, ROA.1896.

[59] Declaration §5.1 ("Failure to pay by the fifteenth (15th) day of each month shall require the imposition and assessment of a late charge of Five Dollars ($5.00)", ROA.1896.

[60] Declaration §5.1, ROA.1896.

[61] *Kimberly Dev. Corp.*, 404 S.W.2d at 636; *In re Keener*, 268 B.R. at 922; *Dodd*, 670 S.W.2d at 649.

[62] De Moss's brief, pg. 28-29.

[63] *Id*.

[64] Declaration § 5.1, ROA.1896.

with the maintenance and operation of the Common Elements."[65]   Section 5.3 limits the basis upon which the Board must determine the assessment for Common Expenses to a particular list of expenditures or liabilities, none of which relate to the late charge assessment.[66]

### (b) The Texas Property Code does not amend the Declaration.

De Moss argues that section 82.102 of the Texas Property Code authorized the Association to increase the late fees because nothing in the Declaration prohibits the Association from doing so.[67]  De Moss admits that section 82.102(a) is a gap-filling provision that authorizes an association to impose certain charges "Unless otherwise provided by the Declaration . . . ."[68]  That provision nullifies any authority derived under section 82.102 to impose charges that are "otherwise provided by the declaration."[69]

The Declaration imposes a $5.00 late charge assessment[70] and provides a mechanism to amend its express provisions upon approval by 90% of the Owners.[71]  De Moss fails to explain how the Declaration does not "otherwise provide for" a $5.00 late charge assessment.  De Moss mistakenly construes 82.102(a) to grant authority "Unless prohibited in the Declaration," rather than "Unless otherwise provided in the Declaration."[72]

---

[65] Declaration § 5.3, ROA.1897.
[66] Declaration § 5.3, ROA.1897.
[67] De Moss's brief, p.29-30.
[68] De Moss's brief, p.29.
[69] Tex. Prop. Code §82.102(a).
[70] Declaration § 5.1, ROA.1896.
[71] Declaration § 8.1, ROA.1913.
[72] De Moss's brief, p.29.

**(c) De Moss's failure to file the proper dedicatory instrument.**

De Moss argues that no authority exists "stating that failure to file a Resolution" negates authority to impose charges under section 82.102(12).[73]  As explained in Appellant's Brief,[74] section 8.1 of the Declaration[75] and section 202.006(a)[76] of the Texas Property Code both required De Moss to file, in the real property records, dedicatory instruments reflecting amendatory increases to the late charge assessment.[77] Section 202.0006(b) renders the instrument a nullity until it is filed.[78]  Finally, Texas law requires that the power of sale be exercised only upon strict compliance with the governing agreements and applicable law.[79] Consequently, even were the Association otherwise authorized to increase the late charge assessment, it's failure to record an appropriate dedicatory instrument before February 2014 renders the Board's resolution a nullity.[80]

**5) De Moss's demand for time-barred debt.**

De Moss does not dispute that it made demands and foreclosed based upon a balance that included time-barred amounts.[81]  Neither does De Moss dispute that a

---

[73] De Moss's brief, p.30.

[74] Jackson and Mahmoud's Appellants' Brief p.25.

[75] Declaration §8.1, ROA.1913.

[76] TEX. PROP CODE §202.006(a).

[77] "Dedicatory Instrument" incudes a declaration or similar instrument, subjecting real property to properly adopted rules and regulations of the property owner's association and all lawful amendments to the covenants, by-laws, instruments, rules or regulations. TEX. PROP. CODE §202.001(1).

[78] TEX. PROP. CODE §202.006(b).

[79] *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ); *Metcalf v. Deutsche Bank Nat. Trust Co.*, 3:11-CV-3014-D, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012).

[80] TEX. PROP. CODE §202.006(b).

[81] De Moss's brief, p.30-31 (Contrary to De Moss's assertion, Jackson and Mahmoud's position has always been that the time-barred portion of the lien was invalid and that other portions of the lien were invalid for other reasons).

lien is void to the extent it is based upon time-barred debt.[82]   Nevertheless, De Moss argues that because part of the debt was not time-barred, it was entitled to reject all payments tendered by Jackson and Mahmoud, thereby rendering performance impossible.[83]

### 6) Fact issues preclude summary judgment.

De Moss asserts the district court properly weighed the evidence to determine that no fact issue remained as to Jackson and Mahmoud's claim that De Moss assessed a repair charge without proper notice.[84] De Moss pointed out that Jackson and Mahmoud included in their summary judgment proof the declaration of Ashraf Mahmoud stating that he disputed but was never given notice and opportunity for hearing regarding a $575.00 repair charge.[85]   Nevertheless, De Moss argues the district court properly disregarded Mahmoud's testimony in favor of an excerpt from the deposition of Valerie Jackson in which she could not remember whether particular entries in De Moss's transaction report constituted improper charges.[86]   For summary judgment purposes, Valarie Jackson's imperfect memory does not negate Ashraf Mahmoud's testimony of his recollection.[87]

---

[82] De Moss's brief, p.30-31 (referring to Appellant's Brief at 26-29).

[83] *See* discussion *supra* regarding excused performance and De Moss's rejection of payments rendering performance impossible.

[84] De Moss's brief, p.31-32.

[85] De Moss's brief, p.31-32.

[86] De Moss's brief, p.31-32, referring to Jackson deposition at ROA.1542-43:
    Q.  Can you recall today under oath whether you may have been billed [as] reflected in that breakdown?
    A.  I can't remember.

[87] *Id*.

### D) <u>Wrongful Foreclosure</u>

De Moss argues that Jackson and Mahmoud's wrongful foreclosure claim is barred because they never lost possession of the property.[88]  The argument fails because Jackson's and Mahmoud's property sold to a third party at the foreclosure sale.[89]  De Moss wrongly argues that notice of default and foreclosure based on time barred debt do not constitute grounds for wrongful foreclosure.[90]

#### 1) Continued possession is irrelevant.

De Moss cites *Petersen v. Black* which barred a wrongful foreclosure claim where the mortgagee attempted to rescind its purchase of the property at foreclosure but the mortgagor retained undisturbed possession.[91]  The court in *Petersen* distinguished the mortgagor's ability to recover wrongful foreclosure damages depending on whether "(1) title to the property has passed to a third party purchaser; or (2) the property has been appropriated to the use and benefit of the mortgagee."[92]  Consequently, the rule described in *Peterson* applies only where the foreclosure sale was never consummated or the mortgagee purchased the property at foreclosure but never disturbed the mortgagor's possession.[93]  De Moss has cited no authority holding that the mortgagor's continued possession bars a foreclosure claim where a third party purchased the property at foreclosure.

---

[88] De Moss's brief, p.32-33.

[89] De Moss's brief, p.9.

[90] De Moss's brief, p.32-33.

[91] *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex.App.—San Antonio 1998, no pet.).

[92] *Id*.

[93] *Id*.; *see also* ***Tarrant Sav. Ass'n v. Lucky Homes, Inc.***, 390 S.W.2d 473, 475 (Tex. 1965); ***Janes v. CPR Corp.***, 623 S.W.2d 733, 738 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); ***Wells Fargo Bank, N.A. v. Robinson***, 391 S.W.3d 590, 594 (Tex. App.—Dallas 2012, no pet.); and ***Alanis v. US Bank Nat'l Ass'n***, 2015 WL 6694005, at *11 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, no pet.).

Additionally, De Moss cannot contend that Jackson and Mahmoud's possession of the property remained undisturbed, where they were forced to defend an eviction proceeding and repurchase their property from a third party.[94]

### 2) Defective Notice.

Contrary to De Moss's assertion,[95] Jackson and Mahmoud complained that De Moss's demands were overstated[96] and that payments were returned for failure to pay the overstated demands.[97]   De Moss cites ***Powell v. Stacy***, for the proposition that an overstated demand does not constitute a defective notice.[98]   In ***Powell***, the debtor complained that sale to a third party was prevented by misstatement of the payoff amount, not that misstatement of the amount necessary to cure prevented his cure of the default.[99] In contrast, Jackson and Mahmoud tendered payments repeatedly, all of which were rejected.[100]

### 3) Multiple Defects in the Foreclosure Proceedings

Contrary to De Moss's argument, the summary judgment evidence showed that De Moss's demands and rejection of payments were based on invalid amounts - including inflated late charges, time-barred charges, and a repair charge assessed without notice.[101]   De Moss also foreclosed based on these invalid amounts – and

---

[94] De Moss's brief, p.32-33.
[95] De Moss's brief, p.9-10.
[96] Plaintiff's Response to De Moss Motion for Summary Judgment, ROA.1636-41, 2081, 2088. 2091-92.
[97] Plaintiff's Response to De Moss Motion for Summary Judgment, ROA.2096.
[98] ***Powell v. Stacy***, 117 S.W.3d 70, 73 (Tex. App.—Fort Worth 2003, no pet.).
[99] ***Id***.
[100] Slaughter letters, ROA.2141-44, 2148-55, 2157-59, 2161-63, 2165-67, 2169-71.
[101] *See supra* and Brief of Jackson and Mahmoud, p.9-13, 31-33.

retained the entire balance it demanded, including invalid amounts.[102]  De Moss argues that none of these facts constitute a defect in the foreclosure proceeding.[103]

The foreclosure proceeding was defective because foreclosure under a power of sale requires strict compliance with the governing agreements and applicable law.[104]  The governing agreements and applicable law did not authorize demand and foreclosure based upon invalid amounts.[105]

### 4) Inadequate Selling Price

De Moss argues there was no evidence of an inadequate selling price.[106]  De Moss admits Jackson and Mahmoud's summary judgment proof included evidence that their Property was worth $70,000.00 to $80,000.00 on the date of foreclosure.[107]  Mahmoud testified that he valued the property at $80,000.00, based on ownership of the property, numerous improvements to the property, and familiarity with the area.[108]  Jackson testified that she valued the property at $70,000.00 based on the tax appraisal, comparable properties, and on improvements made to the property.[109]

Nevertheless, De Moss claims the district court properly ruled that Jackson and Mahmoud's evidence of value was inadmissible.[110]  The district court concluded that Jackson and Mahmoud adduced no competent summary judgment

---

[102] *See supra* and Brief of Jackson and Mahmoud, p.9-13, 31-33.
[103] De Moss's brief, p.32-35.
[104] ***Bonilla v. Roberson***, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996); ***Slaughter v. Qualls***, 162 S.W.2d 671, 675 (Tex.1942).
[105] *See supra* and Brief of Jackson and Mahmoud, p.9-13, 31-33.
[106] De Moss's brief, p.35.
[107] De Moss's brief, p.35.
[108] Mahmoud declaration, ROA.2060.
[109] Jackson deposition, ROA.2117.
[110] De Moss's brief, p.35.

evidence establishing that the $18,500.00 foreclosure price was inadequate.[111]  In a footnote, the district stated "[t]he plaintiff, Mahmoud, testified that the Unit has a fair market value of $80,000.00, but fails to offer any support for this valuation other than his own personal opinion, which does not constitute summary judgment evidence."[112]  That ignores Jackson's valuation testimony[113] and provides no other basis for its conclusion.[114] An owner is always qualified to give his opinion regarding the value of his property which is admissible without further qualification.[115]

### E. <u>Negligent Misrepresentation</u>

De Moss and Creative cite *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*,[116] in support of their argument that this Court may infer that the Trial Court's *sue sponte* summary judgment on claims for negligent misrepresentation was appropriate.  They fail to note that the judgment in *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*,[117] was a partial summary judgment and did not dispose of all issues and all parties.  Thus, the parties in *Exxon Corp.* had an opportunity to bring the error to the attention of the Trial Court any time before final judgment was entered.  In this case, the first notice the parties received that the Trial Court was entering judgment on issues not presented was when the Trial Court entered the final judgment – from which Jackson and Mahmoud timely appealed.

---

[111] Memorandum Opinion, ROA.2225-26.
[112] Memorandum Opinion n.9, ROA.2226.
[113] Jackson deposition, ROA.2117.
[114] Memorandum Opinion, ROA.2225-26.
[115] ***LeCombe v. A-T-O, Inc.***, 679 F.2d 431, 434 (5th Cir. 1982).
[116] 129 F.3d 781 (5th Cir. 1997)
[117] *Id.*

Jackson and Mahmoud responded to the summary judgment motion that was filed and presented evidence sufficient to demonstrate a genuine issue of material fact.[118]

## F.  **Deceptive Trade Practices Act**

De Moss and Creative seek to uphold the summary judgment regarding claims under the Texas Deceptive Trade Practices Act[119] ("DTPA") on the theory that Jackson and Mahmoud are not "consumers" under that statute.[120]  The Trial Court's ruling, however, ignores Section 17.50(h) of the DTPA which provides:

> **Notwithstanding any other provision of this subchapter**, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover ….[121]

Section 17.43 of the DTPA provides that:

> An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter.[122]

Several of Jackson's and Mahmoud's claims were grounded in Chapter 392 of the Texas Finance Code,[123] which states:

> A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.[124]

---

[118] ROA.2097, with accompanying exhibits referenced therein.
[119] Tex. Bus. & Com. Code §§ 17.01 – 17.926.
[120] Doc. 00513451555, pg. 43.
[121] Tex. Bus & Comm. code § 17.50(h) (emphasis added).
[122] TEX. BUS & COMM. CODE § 17.43 (emphasis added).
[123] ROA.68 – 76.
[124] TEX. FIN. CODE § 392.404(a).

Applying the plain language of the statute, Jackson and Mahmoud have standing under the DTPA. This issue was briefed and presented to the Trial Court.[125] The Trial Court's ruling effectively invalidates the tie-in provisions of Tex. Bus. & Com. Code § 17.43, in contradiction to well-established law.[126] The Texas Supreme Court has ruled that "consumer" status is not a prerequisite to a DTPA claim when a tie-in provision makes it a violation of the DTPA.[127] Jackson and Mahmoud asserted DTPA claims pursuant to the standing provided by Chapter 392 of the Texas Finance Code.[128]

## G. Texas Debt Collection Act

Creative argues that Jackson and Mahmoud waived the right to appeal the judgment dismissing claims under the Texas Debt Collection Act ("TDCA").[129] The record demonstrates that Creative violated the TDCA by making demand and threatening foreclosure based upon time-barred debt and unauthorized charges.[130]

---

[125] ROA.2093 - 2094

[126] *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d 443 (2009) "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....' " quoting from *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

[127] *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 387 (Tex. 2000) (citations omitted).

[128] ROA.68 – 76. ("Lack of consumer status, however, does not bar Casteel from bringing a cause of action under Article 21.21 for Crown's violation of DTPA section 17.46(b)(12). Section 17.46(b)(12) makes it a violation to "represent[ ] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." When brought as a claim under Article 21.21, this subsection does not require consumer status because it neither arises out of a consumer transaction explicitly, nor deals with the misrepresentation of "goods or services." We therefore reverse the court of appeals' judgment that Casteel cannot bring *any* DTPA-based Article 21.21 actions against Crown, and hold that Casteel is not required to be a consumer to bring an Article 21.21 claim for the violation of DTPA section 17.46(b)(12)).

[129] De Moss Brief, pg. 48.

[130] Brief of Jackson and Mahmoud p.50.

Moreover, Jackson and Mahmoud described the improper charges demanded by Creative in its August 24, 2012 letter.[131]    Jackson and Mahmoud also cited authority supporting their TDCA claims against Creative[132] that violations of the TDCA include false or misleading assertions including a collection notice or balance statement misstating the amount owed.[133]

The basis for Creative's argument is grounded in the assertion that "Judge Hoyt considered and rejected [Jackson's and Mahmoud's] argument based on Jackson's own admissions there were no incorrect or misrepresented amounts that she could attest to … ."[134]    That argument fails because the district court ignored summary judgment proof that De Moss made demand for and foreclosed based upon invalid amounts.[135]    The argument also ignores evidence that Jackson and Mahmoud's payments were repeatedly rejected.[136]    Finally, the argument ignores evidence that De Moss collected and retained out of the foreclosure proceeds the same invalid amounts originated by Creative.[137]

---

[131] Brief of Jackson and Mahmoud p.9-10.

[132] Brief of Jackson and Mahmoud p.50.

[133] Brief of Jackson and Mahmoud p.50 (citing *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Texas 2013); *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014); and *Johnson v. Wells Fargo Bank*, NA, 999 F. Supp.2d 919, 933 (N.D. Tex. 2014)).

[134] De Moss Brief, pg. 48.

[135] Creative's letter dated August 24, 2012, ROA.2103-04

[136] *See* Creative's Resident Transaction Report, ROA.2120-23; and Slaughter correspondence, ROA.2142-44, 2148-55, 2157-59, 2161-63, 2165-67, 2169-71.

[137] *See* Creative's Resident Transaction Report, ROA.2120-23; and Letter from Slaughter dated February 6, 2013, ROA.1515.

I.    **SLAUGHTER AND FELCT**

A. **Evidentiary Objections**

Slaughter and FELCT assert that the Slaughter affidavit was initially offered in response to Jackson's and Mahmoud's summary judgment motion, and that any objections not asserted at that time were waived.   As set forth in the Appellants' Brief herein, that conclusion ignores well-established law articulated by this Court:

> We review rulings on motions for summary judgment de novo, applying the same standards prescribed for use by the district court. Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[138]

Further, as demonstrated in the Trial Court and in the Appellants' brief herein, Slaughter's assertion of "personal knowledge" is demonstrably false because Slaughter did not represent De Moss or CMC at the time the declaration was amended.[139]

Slaughter and FELCT now assert that personal knowledge is not required in relation to her client's business records.[140]   While public records may be admissible with proper foundation, the purported amendments to the declaration in this case were offered based upon "personal knowledge" which was demonstrably lacking.

B. **FDCPA claims against FELCT & Slaughter**

FELCT and Slaughter's motion for summary judgment did not address the claims for violations of 15 U.S.C. § 1692a (the Fair Debt Collection Practices Act,

---

[138] ***Shaw Constructors v. ICF Kaiser Engineers, Inc.***, 395 F.3d 533, 538-39 (5th Cir. 2004) (emphasis added).
[139] ROA.1149, ¶ 2 (Affidavit of Christi Slaughter).
[140] FELCT brief, pg. 20.

22

or "FDCPA"), and they acknowledge that Jackson and Mahmoud responded to their motion, pointing out that the motion did not seek summary judgment on the FDCPA claim.[141]

FELCT and Slaughter now argue that they did seek summary judgment on the FDCPA claim because they included that argument – for the first time – in their reply brief.[142] FELCT and Slaughter cite no authority establishing that a party may seek summary judgment for the first time in a reply brief, nor did they provide an authoritative basis to the Trial Court.

Even if they had included the FDCPA claims in their summary judgment motion, the response and supporting evidence filed by Jackson and Mahmoud demonstrate that summary judgment was not appropriate. Jackson and Mahmoud demonstrated that FELCT and Slaughter – in their capacity as debt collectors – made repeated demands and ultimately conducted the foreclosure sale of Jackson's and Mahmoud's real property based on time-barred debts and debts that do not constitute a lien.[143] FELCT and Slaughter do not dispute and, indeed, ignore those facts.

FELCT and Slaughter argue that they cannot be liable under the FDCPA or state law because they never threatened or initiated litigation based on time-barred debts.[144] Jackson's and Mahmoud's FDCPA claims, however, were based in part

---

[141] FELCT brief, pg. 25.
[142] FELCT brief, pg. 25.
[143] ROA.1647 – 1650 and exhibits referenced therein.
[144] FELCT brief, pg. 26.

on Slaughter's demands for payment in full **upon threat of foreclosure** based on amounts that did not constitute a valid lien against the Property.[145]

Jackson's and Mahmoud's FDCPA claims are also grounded in Slaughter's false statements rejecting payments received from Jackson and Mahmoud.[146] Slaughter rejected the payments as "imperfect and improper tender," and said that they were being returned as instructed by De Moss.[147]   The summary judgment evidence showed that De Moss did not instruct Slaughter to return those checks. Thus, Slaughter's statements were demonstrably false in connection with debt collection.[148]

FELCT and Slaughter next assert that summary judgment was proper because there was no violation of the FDCPA (15 U.S.C. §1692e & f) since neither Slaughter nor FELCT threatened to or filed suit.[149]   Their argument ignores § 1692f, which prohibits:

> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.[150]

As pointed out to the Trial Court and set forth in the Appellants' Brief already on file herein, Slaughter and FELCT not only threatened – but then

---

[145] *See* argument regarding inflated late charges, time-barred debts and repair charges assessed without notice and opportunity for hearing, *supra*.
[146] ROA.1794, 2006, 2015, 2023, 2034 and 2044.
[147] Letter from Slaughter dated November 12, 2012, ROA.1995.
[148] De Moss Response to Plaintiffs' Interrogatory No. 19, ROA.2058-59.
[149] FELCT brief, pg. 13.
[150] 15 U.S.C.A. § 1692f

collected purported debts that were both barred by limitations and that did not constitute a lien on the subject property.[151]


## Section 1692g Violations

Slaughter and FELCT argue that, "at worst, the Initial Demand Letter is ambiguous," and does not violate 15 U.S.C. § 1692g.[152]  Slaughter's demand letters, however, were both contradictory and confusing:

> You must submit a written request for a payment plan to our offices. Upon receipt, your written request shall be submitted to the Board for its review and decision. . . .  If a payment plan is approved, same will be reduced to a written agreement that you must sign and return to our law firm at the letterhead address with the initial payment . . .  .[153]

Likewise, Slaughter's 1692g(a) disclosures were overshadowed and conflicted with other language in Slaughter's letter.[154]  On the first page Slaughter demanded:

> Unless such default is cured by payment of the total amount of all amounts claimed (or this matter is otherwise settled) on or before the expiration of thirty (30) days from and after the date hereof, the association shall seek nonjudicial foreclosure of the Lien through public auction . . . .[155]

Slaughter's letter does not provide 30 days after receipt of the letter.  Thus, Slaughter's demand for payment expired before the debtors' right to dispute the

---

[151] Appellants' Brief, pg. 38 – 49.
[152] FELCT brief, pg. 29.
[153] ROA.1996
[154] Plaintiff's First Amended Complaint at ¶46-52, ROA.71-73.
[155] Slaughter letter dated October 8, 2012, ROA.1991-92.

debt's validity.  Further, Slaughter's section 1692g(a) notice appears on the second page of the letter without a reference on the first page directing the debtors to the 1692g(a) notice on the second page,[156] and Slaughter demanded payment upon threat of foreclosure within 30 days of the 'date of the letter,' not 'receipt' of the letter.[157]  Because Slaughter's concrete payment deadline expired before the right to dispute the debt, the letter contradicted Jackson's and Mahmoud's right to dispute the debt.[158]  Because Slaughter's 1692g(a) notice appeared on the second page of the letter without reference on the first page (1692g(a) notice), the letter also overshadowed Jackson's and Mahmoud's right to dispute the debt.[159]

Slaughter's and FELCT's appeal brief asserts for the first time that neither Jackson no Mahmoud were in the United States armed forces – and they conclude that the notice was therefore not necessary.[160]  They cite no portion of the record to support that assertion – and it should not be considered by this Court on appeal.[161]

### C. Texas Debt Collection Act claims

Slaughter and FELCT assert that the Texas Debt Collection Act ("TDCA")[162] does not prevent debt collectors from "exercising or threatening to a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."[163]  What they fail to address, however, is the fact that Slaughter and FELCT engaged in debt collection which culminated in foreclosure, and that foreclosure was based on debts that were barred by limitations and which

---

[156] Slaughter letter dated October 8, 2012.ROA.1790 – 1792.
[157] Slaughter letter dated October 8, 2012.ROA.1790 – 1792.
[158] *McMurray*, 687 F.3d at 670-71.
[159] Id.
[160] FELCT brief, pg. 36.
[161] FED. R. CIV. P. 56(a) and (c).
[162] Tex. Fin. Code § 392.301.
[163] FELCT brief, pg. 37.

did not constitute a lien on the property.  Slaughter and FELCT argue, without authority, that where "only 25% of the debt" is improperly included in the foreclosure, there is no violation of the TDCA.  Slaughter and FELCT appear to advocate that there is no violation unless all of the charges in a debt collection demand letter are misleading.  They cite no authority to support such a position, and research failed to identify any.

## PRAYER

WHEREFORE, Appellants, VALERIE JACKSON and ASHRAF MAHMOUD pray that the Court REVERSE the Final Judgment entered by the District Court and remand this case for further proceedings consistent with this Court's opinion.  Appellants request all other relief to which they are justly entitled.

Respectfully submitted,

By: */s/ Lindsay L. Lambert*
LINDSAY L. LAMBERT
LAMBERT & JAKOB, PLLC
Texas Bar No.:  11844225
Federal ID No.:  15079
9800 Centre Parkway, Suite 645
Houston, Texas 77036
(713) 640-5700 – Telephone
(855) 678-5585 – Facsimile
LLambert@LJLawFirm.net

ATTORNEY FOR PLAINTIFFS
ASHRAF MAHMOUD AND
VALERIE JACKSON

27

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This reply brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(ii) because:

✓    this reply brief contains 6,979 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

this brief uses a monospaced typeface and contains [stat the number of] lines in text, excluding the parts of the brief exempted by FEC. R. APP. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

✓    this brief has been prepared in a proportional typeface using Microsoft Word in Times New Roman 14 point font, with footnotes being included in Times New Roman 12 point font, *or*

this brief has been prepared in a monospace typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

 /s/  *Lindsay L. Lambert*
Attorney for Appellants,
Valarie Jackson and Ashraf Mahmoud

Dated: February 1, 2016

28

CERTIFICATE OF SERVICE

On April 29, 2016, a copy of Appellants' Reply Brief was served on all counsel of

record via the Court's ECF system and, by agreement, via email as follows:

Valarie J. Eisler
eissler@litchfieldcavo.com
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056

William L. Van Fleet, II
William S. Chesney, III
bvfleet@comcast.net
wchesney@felct.com
FRANK, ELMORE, LIEVENS,
CHESNEY &TURET, L.L.P.
9225 Katy Freeway, Suite 250
Houston, Texas 77024-1564

                               _/s/Lindsay L. Lambert_
                               Lindsay L. Lambert